# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Michelle Mascioli

Write the full name of each plaintiff.

-against-

25th Street Chelsea Equities, LLC
Dan Haron, Benyamin Egamov, Yoav Eton,
K&R Realty, Arbmus Construction,
NYC Partnership Housing Development Fund Co. Inc

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

18 CV 2116

(Include case number if one has been assigned)

## COMPLAINT

Do you want a jury trial?
☐ Yes   ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

2018 MAR -8 PM 5:00
SDNY PRO SE
RECEIVED

# I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑  **Federal Question**

☐  **Diversity of Citizenship**

## A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

42 U.S.C. § 14043e -11

42 U.S.C. § 3604 (d); 24 CFR § 100.80 (b)(2); 24 CFR § 5.657 (c)(2011); Handbook 4350.3, at chp. 7, § para. 7-13.

## B.  If you checked Diversity of Citizenship

### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff,  _Michelle Maffioli_ , is a citizen of the State of
(Plaintiff's name)

_New York_
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _25th Street Chelsea Equities LLC_, is a citizen of the State of
_(Defendant's name)_

_Delaware, but pursuant to Laws in New York + a nominee by (NYC Housing Partnership)_

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _(all others)_, is incorporated under the laws of

the State of _New York_

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_Michelle_   _G_   _Mascioli_
First Name          Middle Initial          Last Name

_401 West 25th Street, APT 15I_
Street Address

_New York_        _New York_        _10001_
County, City                State                Zip Code

_(646)761-3645_        _michellegmas@gmail.com_
Telephone Number                Email Address (if available)

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: Benyamin Efamov
First Name   Last Name
25th Street Chelsea Equities LLC, Artimus Construction
Current Job Title (or other identifying information)
316 West 118th Street
Current Work Address (or other address where defendant may be served)
new york   new york
County, City   State   Zip Code

Defendant 2: Yoav Eton
First Name   Last Name
25th Street Chelsea Equities LLC, Artimus Construction
Current Job Title (or other identifying information)
316 West 118th Street
Current Work Address (or other address where defendant may be served)
new york   new york
County, City   State   Zip Code

Defendant 3: Dan Haron
First Name   Last Name
25th Street Chelsea Equities LLC, Department Housing
Current Job Title (or other identifying information)
Community Renewal appointed representative (of property
Current Work Address (or other address where defendant may be served)
of instant action)
County, City   State   Zip Code
new york   new york
316 west 118th Street, ny, ny

Defendant 4: _New York Partnership Housing Development_
First Name                                        Last Name

_Fund Corporation, Inc._
Current Job Title (or other identifying information)

_450 Seventh Avenue, Suite 2401_
Current Work Address (or other address where defendant may be served)

_New York          New York_
County, City                    State                         Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _401 W 25th Street, Apt 15i, New York, New York, 10001_

Date(s) of occurrence: _[April 4, 2013 — February 28, 2018]_

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

(1)

Plaintiff entered into agreement with Defendant 25th Street Chelsea Equities LLC on January 13, 2012 by lease (contract) with co-tenant, Sune Gaulsh to rent a unit at 401 West 25th Street, apt. 15i, ny, ny 10001. Co-tenants, Michelle Mascioli & Sune Gaulsh, both named on the lease, were occupying the apartment together with their child in common, "LJMG" who was 6 months old at the time of lease signing. The tenants were approved for a unit at "Elliot Chelsea" (401 W 25th St) on 12/7/2011 after an application made on 10/24/2011 through K&R Realty, address at the time, formerly - 37 West 65th Street, new york ny - current address 316 west 118 Street, ny, ny. Tenants were subject to income restrictions for the unit, where two occupants income combined could not exceed 160k/yearly. Tenant Sune Gaulsh was providing all income for the family unit - Michelle Mascioli was caring for the child in common, LJMG, on a full-time basis

and certified with management that she was unemployed. The parties to the lease were required to submit significant documentation to acquire the highly-sought after Rent-Stabilized Unit, which also recieved 421-a tax benefits as well as Low Income Housing Tax Credits.

· During the period the tenants lived together, several acts of domestic violence took place against the Plaintiff by co-tenant, the most serious injury causing a rib fracture in May 2012, which Plaintiff sought medical care for but chose not to report in order to protect the father of the child, Sune Gaulsh, from criminal proceedings & jeopardize his status in becoming a U.S. Citizen.

On April 4th, 2013 the domestic violence and discord between tenants came to a climax, where Sune Gaulsh absconded with the child, accompanied by his mother who was visiting from Copenhagen, Denmark and from where Mr. Gaulsh is a citizen. The parties were unresponsive to Plaintiffs pleas for communication and Plaintiff filed a Domestic Incidence Report at the precinct in Chelsea, New York nearst the property. ②

Defendant 4:

First Name _____ Last Name _____

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City _____ State _____ Zip Code _____

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and what each defendant personally did or failed to do that harmed you. Attach
additional pages if needed.

In the case against his former attorney,
Gordon Diefenbach, Mr. Gautsch claims, among other
claims, that he was fraudulently induced
and under duress & forced to file a false
family offense in the Family Court Upon the
Court Judge advising tenant to refile the
papers correctly, his counsel had the Judge
recused and filed same family offense
under false pretenses with a different Judge-
now retired, Gloria Sosa-Lintner, who
presided over the matter until it was
settled in December 17 2014 and So Ordered
by Her Honor

③

To prevent the child from being taken out of the country he was placed on the "No Fly" List by the Department of Homeland Security agt. Plaintiff recieved communication from FBI federal agent Walter Wright, via email.

The parties were discovered in Family Court of new York after about 10 hours of no contact, filing a complaint for a Family Offense against Plaintiff, pursuant to a custody petition, and a Temporary restraining order. On same Evening, Plaintiff was served the papers by June Gaulsh, by accompanying police officers, at the apartment unit and summons was served to appear the following morning In family Court of new York. Tenant June Gaulsh, was originally represented by Gordon Diefenbach, Esq. and later by Kasowitz Benson et al; whereas former tenant is currently in a case against his first lawyer - Gordon Diefenbach In new York Supreme Court, and a matter has been resolved in another suit brought by Mr. Gaulsh's second attorneys at the firm Kasowitz et al.

④



an attorney Kenneth Walsh, and Mr. Gaulsh
retained Attorney Rhonda Panken. The matter
for modification of custody commenced in December
2015 and is still pending in the Family
Court where a trial has commenced in
December 2017 and next scheduled dates
not until May 2018.

Mr. Gaulsh filed an Order to show Cause
on May 17 2017 which granted emergency
custody Based on the allegation and claim

**INJURIES:** that Plaintiff had Become Homeless

If you were injured as a result of these actions, describe your injuries and what medical
treatment, if any, you required and received.

due to the housing instability and Harassment
& eviction proceedings brought against Plaintiff.
The decision was made ex parte, and granted
full custody to Sune gaulsh for the Father
to make all decisions & Child LTMG be in his care

**IV. RELIEF** and reside with him until further

State briefly what money damages or other relief you want the court to order.

Order. Based on this custody award Mr.
Gaulsh effectively ended communication, visitation
and Decided to effect that This Order
Superceded the Parenting Agreement carefully
Contracted, and Plaintiff was suddenly

and instantly alienated from the child, son LTMG,
not yet 5 years of age. Mr. Gaulsh, upon
Plaintiff pleading to see the child threatened to file
harassment if he were contacted further

In an additional, and of Highest concern (6)
to Plaintiff, is a pending Family Court
Trial, regarding a modification of the original
Parenting Agreement/ Custody Order for Joint
Custody by parties Michelle Moscicki + Sune
Gaulsh for Child in common LJMG.

Mr. Gaulsh, in arrears on Child support
payment, Ordered By direct pay to Plaintiff
in the amount of $1600/month, pursuant to
agreed upon contrace and SO Ordered in
Family Court ~~January 201~~ December 17, 2014
and "subject to" Parenting Agreement agreed
upon at same time.

The matter was brought Back to Family
Court of New York, awarding Plaintiff some of
unpaid arrears and changing the order for support
to be pursuant By "support Collection Unit."
Plaintiff also filled a modification
for custody, in retrospect, an erroneous
motion which brought harm, confusion and
Chaos into an already hectic Parenting
Relationship. The Plaintiff was assigned

to prevent further harm & emotional
stress to the child, and referred the ⑦
Parties to ~~child~~ "CFS", Comprehensive
Family Services, 291 Broadway, Suite 808,
NY, NY 10007

To date March 7, 2018 the only
Visitation since September has been Upon
exchange at "CFS", which is daytime
hours, subjecting Plaintiff & child to
limited time together, without cause, and
child has not slept overnight, with Plaintiff,
in the home he has lived in since 6 months old,
and property subject 401 West 25th Street, 15i.

Mr. Hanish additionally filed to
dismiss child support order of $160/month,
effective as of June 2017, and seeking an
order for support be paid to Him By SCU
By ~~court~~ of $100/week, granted in default,
Plaintiff                     October 2017,



United States District Court
Southern District of New York

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

The devastation suffered by Plaintiff, and more importantly, injustice and harm to the child, at an age of 4 years old, 5 years old August 24th — where Plaintiff took the child to Denmark for his birthday without consulting Plaintiff or verifying the travel arrangements or considering the contact/visitation between mother and child.

Upon a return to Family Court after summer holiday, Honorable Machele Sweeting - justice presiding over the custody matter, was seemingly shocked that Mr. Faulsh had not allowed visitation to continue, now in September, 2017 - cutting ties between the child & his mother from May 17, 2017 until September 9, 2017, for cause of pending eviction which Plaintiff was tending to in court and with management and further a false claim Plaintiff was living in a homeless shelter, Judge Sweeting ordered visits to take place

(8)

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | Plaintiff's Signature |
|---|---|

| First Name | Middle Initial | Last Name |
|---|---|---|

Street Address

| County, City | State | Zip Code |
|---|---|---|

| Telephone Number | Email Address (if available) |
|---|---|

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



The tenant, Sane tanish effectively vacated the apartment April 4, 2013. Plaintiff was not contributing to the rent of $3,421.00 having just returned to work as a realtor and not earning any income, and upon co-tenant vacating became responsible for the entire lease for herself and child.

On October 15, 2014 Plaintiff contacted management at K & E Realty with concerns of having former tenant + occupant removed from the lease as he was returning to the premises and using his status named on the

**INJURIES:** lease as argument for keeping surveillance, despite

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received. a restraining order between

the parties.

Please see attached complaint to New York State Division of Human Right for further and more concise summary of facts. Plaintiff filed a complaint for discrimination, which was

**IV. RELIEF** accepted by Housing Urban Development

State briefly what money damages or other relief you want the court to order.

On January 9th, 2018. Federal Charge No. 02-18-9064-8. New York State Division of Human Right was referred the case and verified the complaint pursuant to Excutive Law, Article 15. The Department is still investigating with most recent request for rebuttal by the plaintiff submitted (on time) March 7, 2018 by US Postal Certified Mail

Page 6

The Plaintiff, however has Been in
a Housing Court Case with 25th street
Chelsea Equities LLC, where Judge John
Stanley has issued a judgement for
eviction pursuant to Claim that Plaintiff
did not have a meretorious defense —
as it was difficult for her to orally argue
the case against landlord in court and
present facts. The Plaintiff prays that this
Court will Order a Temporary Restraining
Order to stay the Eviction, Which is
Scheduled for or upon the departure of
alleged arrears in the amount of 827,
by Marshall notice to Plaintiff; effectively
Granting the eviction By march 10th, 2018
and possibly until march 16th pursuant
to 6 days Business rule regarding mailed warrant

(10)

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| _3/8/2018_ | _RM_ |
| Dated | Plaintiff's Signature |
| _Michelle_  _G_ | _Mascioli_ |
| First Name            Middle Initial | Last Name |
| _401 West 25th street,  Apt. 15i_ | |
| Street Address | |
| _new york_      _new york_ | _10001_ |
| County, City            State | Zip Code |
| _(646) 761. 3645_ | _michelle g mas @ gmail. com_ |
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes    ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

March 7, 2018

NYS Division of Human Rights

Housing Investigation Unit

One Fordham Plaza, Fourth Floor

Bronx, NT 10458

**Re: Michelle Mascioli v. 25th Street Chelsea Equities LLC, Dan Haron, Benyamin Efamov, Yoav Eton, K&R Realty Management, John Liparoto, Artimus Construction**
        **Case No. 10192474**

**Rebuttal to Respondent's Written Response and Additional Information**

K&R Realty Management states "Ms. Mascioli first moved into 401 West 25th Street, Apt. 15i in February 2012." The apartment was, however, a joint tenancy by Michelle Mascioli and Sune Gaulsh and subject to occupancy and income restrictions based on both tenants and their child in common, son, Lucas Gaulsh and pursuant to Rent Stabilization Law and Federal Housing Loans and applicable laws.

The Unit is restricted to households earning 195% of Area Median Income at the time of certification or initial occupancy of the unit. Tenants are not disqualified or ineligible upon falling below the income level they certified at, only if they go beyond or increase their income above the limit.

Upon "household composition change", where co-tenants Sune Gaulsh and Michelle Mascioli had a Temporary Restraining Order and matter pending for Custody of the child in common in Family Court of New York, the management company was notified and

**Case No. 10192474**                                                                                      1

advice and help was requested from the remaining tenant, Michelle Mascioli, for herself and her son and pursuant to Domestic Violence issues.

Management is evading several Federal, State and City laws in alleging that the tenant is not eligible to stay within the same unit, and must vacate to another 'low-income' unit, as the tenants in the project become "low-income tenants" based on their initial certifying income, which Michelle Mascioli was unemployed at the initiation of the lease and not earning income, staying home with her infant son.

Management is wrong in alleging that tenant Michelle Mascioli was "in arrears" during the entire timeframe of the emails. The landlord, owner, or management on behalf of promised to reassess the rent and reissue a new lease and failed to follow through on it's offer. Fees for garden access, late fees and other erroneous charges ensured that there was a wrongful balance on the account. When presented with the issue in Housing Court, the promised was entered onto the Stipulation Agreement, and again, the management company failed to follow through despite paying significant arrears in the hope of securing a safe and reasonable place to live for myself and my son.

Management alleges a simple email requesting Michelle Mascioli remain in the same apartment should not supersede the building and it's development as a condominium unit. However, the tenant's emails were pursuant to exactly these matters and the corresponding laws that permitted her to stay within her apartment. Further, the project is incorrectly registered with Housing Preservation and Development, has outstanding violations with the Department of Buildings and has not complied with Federal and State Laws which dictate very clearly how the Project should operate pursuant to 421-a and LIHTC tax benefits as well as Private Housing Finance Law. The building is also subject

**Case No. 10192474**                                                                 2

New York City Housing Development Corporation Act, Article XII of the Private Housing Finance Law (Chapter 44-b of the Consolidated Laws of the State of New York), Article 9-B of the New York Real Property Law (333-d et seq.) of the State of New York, and Restrictions running with the Premises, and binding on the Mortgagor.

The following persons corresponded via email on behalf of K&R Realty, and "the Owner" from October 2011 through February 2017: Khadija Todd, Aaron Cohen, Crystal Lee, Maureen McKeever, Gwendolyn Rodriguez, John Liparoto, Joshua Kaufman, Jenny Nunez. Below is a summary of documented correspondence with the above named parties of K&R Realty as well as events which were affected by the discriminatory practices to the tenant, Michelle Mascioli and her son, Lucas Gaulsh. Most recently the Family Court restricted Lucas from residing in the apartment, based on emergency application naming the apartment as unsafe due to pending eviction proceedings. Effectively, the tenant has lost temporary custody of the child, as well as overnight parenting time including Child Support Payments of $1,600/monthly further affecting the stability and quality of life for the tenant and her son.

On October 24th, 2011 Plaintiff Michelle Mascioli expressed interest in renting an apartment at 401 West 25th Street with son, Lucas Gaulsh and his father Sune Gaulsh, from K&R Realty by sending an e-mail to Joshua Kaufman and made an application to rent an apartment.

October 27th, 2011, Joshua Kaufman sent an email regarding the application submitted by the Plaintiff and co-tenant Sune Gaulsh to rent an apartment at 401 West 25th Street

**Case No. 10192474**                                                                 3

"Elliot Chelsea" stating, "I would like to bring you in immediately for an interview and supply us with the required paperwork." Attached to the email was a document with necessary paperwork the parties needed to bring to the interview.  The documents requested were the Last 4 Consecutive Pay Stubs, Last 6 Bank Statements, W-2 Form and Tax Returns for 2009 and 2010, Picture I.D. for every apartment resident, Employment Verification Letter, Last 3 Consecutive Con Edison Bills, Last 3 Consecutive Telephone Bills, Birth Certificate of all Children, Current Lease, Proof of the Last 3 Rent Payments and Credit and Housing Check Fee of $50 per person to perform Credit and Housing Reports.

On October 28th, 2011 Plaintiff disclosed by email to Joshua Kaufman that she would not be applying for the apartment but would be living in the apartment. Plaintiff was not working at the time of the inquiry and receiving unemployment benefits. The parties child in common, was an infant at the time and primarily cared for by the Plaintiff while co-tenant Sune Gaulsh, the father was working full time for Barclays Bank and providing the main source of income for the family. Management responded that all the Plaintiff's documents would be necessary as well.

On December 7, 2011 the Plaintiff received an email for an approval of an apartment at Elliot Chelsea, 401 West 25th Street and a unit would be assigned. On December 12th, the parties paid the security deposit to the management company to secure a unit, payable by bank check in the amount of $3,421 to 25th Street Chelsea Equities.

On January 3, 2012 the parties were assigned unit 15i and accepted the assigned unit and scheduled a lease signing.

Case No. 10192474

The parties signed the lease on January 13, 2012 and paid the management company for one month of rent by bank certified check to 25th Street Chelsea Equities LLC in the amount of $3,421.

The parties picked up the key to the apartment unit 15i on February 1, 2012 and movers moved the parties belongings into the unit on February 2, 2012.

On November 1, 2012 the parties renewed the lease for the year 2013.

April 4, 2013 Domestic Incident Report filed with the NYPD when co-tenant Sune Gaulsh absconded with the parties child in common after domestic incident.

On April 4, 2013 the parties commenced action in the New York Family Court for Custody of their child in common which included Temporary Restraining Order between the parties and a Family Offense Petition. Co-tenant, Sune Gaulsh vacated the apartment the following day pursuant to the Order to gather personal belongings and found temporary housing.

May 7, 2013 An invoice from Squad Security for surveillance performed on the Plaintiff and the premises, 401 West 25th Street, by former co-tenant Sune Gaulsh from the dates April 5-18, 2013 initiating the onset of stalking in the amount of $1,437.50.

August 2, 2013 Plaintiff emailed management asking to speak with them over the phone and discussed the issue with Aaron Cohen and Sharlene Khan of K&R Realty regarding former co-tenant and asked how to proceed.

November 1, 2013 lease renewal was sent with both tenants on the lease and returned twice because it was not signed by both parties on the lease, and refused to be renegotiated or renewed by management with only single tenant on lease with child. [Respondents unlawfully made a dwelling unavailable based on familial status in

violation of 42 U.S.C. § 3604(a); 24 C.F.R. § 100.50(b)(3); 24 C.F.R. § 100.60(a) and (b) (5); and 24 C.F.R. § 100.70(b).]

January 31, 2014- January 1, 2015 tenant was refused lease and not able to renew, went without a Lease for the full year of 2014. [Respondent violated the Act by retaliating against Complainants after reasonable requests were made to adjust rent and remove co-tenant from the lease and remain as single mother, 2015.42 U.S.C. § 3617; 24 C.F.R. §§ 100.400(b), (c)(5).]

October 9, 2014 Plaintiff requested a lease renewal from K&R Realty Management and was notified renewal would not be sent until November.

October 15, 2014 Requested a lease renewal, removing co-tenant Sune Gaulsh from the lease and change in occupancy and asked to remain in the apartment, singularly with her  son. Management was informed that there was an order restricting tenants from co-habitating and a Temporary Restraining Order between the tenants. Renewal was refused. Plaintiff expressed that she had been trying for over a year resolve the lease with management and that in that time, domestic violence issues were still prevalent and co-tenant was appearing at the apartment on the basis that he was still named on the lease.

October 15, 2014 Management responded and apologized for the delay stating they were taking the Plaintiffs issues and concerns seriously and needed time to research the options and rules to have co-tenant taken off the lease and to renew the remaining occupants lease. [24 C.F.R. § 5.657 (c) (2011) ("A family may request an interim reexamination of family income because of any changes since the last examination. The

Case No. 10192474                                                                                    6

owner must make the interim reexamination within a reasonable time after the family request.");

October 20, 2014 Management replied that they were able to remove co-tenant from the lease and requested that Plaintiff send updated financials including tax returns, bank statements, pay stubs and court documentation as well as former co-tenant's new address. [*Maxton Housing Authority v. McLean, 313 N.C. 277, 328 S.E. 2d 290(N.C. 1985) (public housing – holding that after separation, remaining spouse's public housing rent should be based on new income)*.]

October 23, 2014  Plaintiff scheduled to meet with the management company and drop off documents in person, and sent email saying that she was on the way to the meeting. Plaintiff submitted requested documents to the management company at that time.

October 24, 2014 a Domestic Incident Report was filed with NYPD by Police Officer Spector, describing former tenant attempting to access the premises at 401 West 25th Street.

September 2, 2014 Request sent to management to remove erroneous fee for garden access for the third time. Management used this fee to incur other late fees and begin erroneous charges to start a non-payment case.

September 27, 2014 Plaintiff changed the locks of the unit 15i through S.O.S. locksmith, to prevent former tenant from entering the apartment and paid the sum of $195.97.

April 7, 2015 Management still does not renew the lease and requests documents from Plaintiff again but is unable to meet at various requested times.

April 7-10 2015, Management refused to accept rent and blocked payment, returned checks after agreeing to reassess and renegotiate based on change in familial status.

**Case No. 10192474**

August 21, 2015 Served 3-day notice of eviction

September 4, 2015 Management promised Plaintiff she would be able to renew the lease at renegotiated monthly amount pursuant to occupancy and low income standards if the current balance was paid. Plaintiff stated in e-mail to management that she was experiencing financial hardship due to son's father not paying child support and a matter was pending in Child Support division of Family Court of New York. Plaintiff requested again that former co-tenant be removed from the lease, Sune Gaulsh, so that Plaintiff Michelle Mascioli would have a safe place to live with her four year old son.

September 4, 2015 Plaintiff requested that payment processor be unblocked so that she could make a payment to the management company in order to be able to renew the lease. The payment processor was blocked from accepting payments. The management company representative, Gwendolyn said there would be a 24 hour window to make the payment. Plaintiff requested that erroneous fees for Garden Access and late payments be removed and the balance be corrected.

Plaintiff made a payment in the amount of $10,294.87 through the management company's processing website Clickpay. Management was unresponsive regarding fees and did not adjust the balance.

On September 22, 2015 Plaintiff submitted tax returns, bank statements and financial documents in order to renew the apartment as promised by the management company.

October 19, 2015 Plaintiff requested management renegotiate the lease and renew after no response from submission of documents

October 19, 2015 Maureen from K&R Realty Management emailed saying that the lease could not be renewed at that time because current lease, ending 1/31/2016

needed to expire first. Stated that Plaintiff should make another request to have lease in my name only. Management company then became unresponsive.

Plaintiff attempted to negotiate the renewal with management and did not receive any feedback about changing the monthly rent but was encouraged to sign the lease renewal for the time being or risk being evicted from the apartment.


April 20, 2016 Letter from Sperber Denenberg & Kahan, PC claiming incorrect rental arrears of $7,480.58

May 17, 2016 Refusal of Management to accept Rent payment, and returned via Chase Credit Return

May 24, 2016 Case started in Housing Court, Notice of Petition, Non-Payment Dwelling, L&T 16N065028/2016

October 16, 2016 Rent Demand from Borah Goldstein, Altschuler Nahins & Goidel for rent alleged $20,048.45

November 7, 2016 Notice of Petition Non-Payment of Rent L&T 81783  for rent alleged $20,193.45

December 1, 2016 Check returned in the amount of $7,000.00 by regular mail

December 7, 2016 Stipulation of Settlement which included tenant could renegotiate lease based on new household income and single status after payment of arrears.

[*01-15-0405-8 Hernandez, et al v. DeRaffele, 1. It is unlawful to refuse to rent after the making of a bona fide offer, or to refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of familial status. 42 U.S.C. § 3604(a); 24 C.F.R. §§ 100.50(b)(3), 100.70(b).*]


**Case No. 10192474**                                                                                              9

February 8, 2017 Cashier's Check in the amount of $15,000 to 25th Street Chelsea Equities

February 16, 2017 Plaintiff wrote an email directly to managing agent of the building, John Liparoto requesting to reduce the rent

Februry 28, 2017 Plaintiff wrote to managing agent John LIparoto again after not receiving a response and asked for renegotiation of the rent because of financial hardship

March 1, 2017 John Liparoto responds by apologizing for "missing the emails" and that rent cannot be negotiated during the term of the lease. [*§ 296(i) a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations]*

March 6-10, 2017 Management refusing to accept payment by check or payment online, giving window of a few hours to make payments and then locking again.

May 18, 2017 Family Court of New York grants Sune Gaulsh, former co-tenant of premises 401 West 25th Street, 15i and father of child in common temporary custody of the child, Lucas on the grounds that the housing instability and eviction proceeding had caused an unsafe environment for the child. [*§ 296. Unlawful discriminatory practices. 2. (a) It shall be an unlawful discriminatory practice for any person, being the owner,*

Case No. 10192474                                                                                      10

*lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.*]

August 28, 2017 Notice of Petition for Non-Payment of Rent L&T 72878 alleged in the amount of $11,646.53 in New York Housing Court

December 21, 2017 Notice of Eviction [*42 U.S.C. § 3604(d); 24 C.F.R. § l00.80(b)(2). 4. It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by sections 803, 804, 805, or 806 of the Act.*]

January 18, 2018 Notice of Entry Decision/Order John H. Stanley that property is incorrectly registered in the Multiple Dwelling Registration

**Case No. 10192474**                                                                                    11

February 16, 2018 Possession of the Premises be awarded to 25th Street Chelsea

Equities along with a monetary judgment of $24,007.63 in New York County Civil Court

Index Number LT-072878-17/NY

February 16, 2018 Order to Show Cause to Vacate Default Judgement and Restore to

Calendar

February 28, 2018 Decision/Order by John Stanley in Housing Court staying warrant 10

days to 3/12/18 for payment of $27,672.92. Upon default of payment Marshall Notice

should be served by mail.


The Rent Roll submitted by the management company shows the status codes and

move-in date of each unit  in the premises. The Rent Roll shows that Unit 15i is subject

to Rent Stabilization Laws and "NHOP".

The Rent Roll does not show the Initial Rents or The legal Regulated rents.

The Rent Roll shows over 15 apartments vacating and starting new leases since tenant

first made a request to reassess income and status in 2014. The management does not

showing the prior rent for each apartment. However new leases were made in

apartment 2I tenant move-in 1/9/2015, unit 2J new lease 12/01/2015, 3I new lease on

07/15/2017, 5C new lease 2/10/2017, 7D New lease 9/24/2015, 7H new lease

2/17/2016, 8B, new lease 1/1/2016, 8C new lease 3/7/2016, 8F new lease 4/6/2017,

12A new lease 6/16/2016, 12B new lease 3/5/2015, 14G, new lease 3/7/2016, all where

the tenant expressed interest or agreed to move units if necessary to next available,

beginning in October 2014. *[42 U.S.C. § 3604(c); 24 C.F.R. §§ l00.50(b)(4), 100.75(a),*

*(b), and (c)(2). 3.It is unlawful to represent to any person because of familial status that*

*any dwelling is not available for inspection, sale, or rental when such dwelling is in fact*

*so available, including representing that covenants or other deed, trust or lease*

*provisions which purport to restrict the rental of dwellings because of familial status*

*preclude the rental of a dwelling to a person.*]

The most egregious breach by the landlord and management is clear in the Rent Roll's

verification that apartment 8F became available on or before 4/6/2017 and is a unit that

has Status Codes which certify that it is a "Low Income Unit" and Stabilized Unit, where

Management specifically stated on March 1, 2017 that no low-income units were

available by email of John Liparoto after two requests around that time, specifically

February 16, 2017 and Februry 28, 2017 by email directly to managing agent of the

building, John Liparoto requesting to reduce the rent were made by the tenant and

explaining the circumstances once again. [*Non-discrimination. No owner of any dwelling*

*which is receiving the benefits of the Act, nor any agent, employee, manager, or officer*

*of such owner shall directly or indirectly deny dwelling accommodations in such*

*property, or any of the privileges or services incident to occupancy in violation of*

*§11-243(k) of the Administrative Code;*  (a) To refuse to sell, rent or lease or otherwise to

deny to or withhold from any person or group of persons such housing accommodations

because of the race, creed, color, disability, national origin, sexual orientation, military

status, age, sex, marital status, or familial status of such person or persons, or to

represent that any housing accommodation or land is not available for inspection, sale,

rental or lease when in fact it is so available.

Case No. 10192474                                                                                    13

Permitted Rent. "Permitted Rent" means a rent for any lease or lease renewal at any time during the Restriction Period or Extended Restriction Period, as applicable, that does not exceed the lesser of (i) thirty percent of the applicable Area Median Income, minus the amount of any applicable Utility Allowance, provided, however, that solely for purposes of establishing the initial rent for each Affordable Housing Unit, the Area Median Income in effect as of the earlier to occur of the (A) date of any regulatory agreement between the fee owner and the Agency, or (B) date of filing of the Notice of Intent, shall be utilized, or (ii) the Legal Rent.

The Petition for Non-payment alleged by the Respondent 25th Street Equities, in Housing Court  states and is pursuant to the following:

The premises are subject to the Rent Stabilization Law of 1969 as amended and have been duly registered with NY State Division of Housing and Community Renewal - The Rent Demanded herein in the Lawful Rent and does not Exceed the Registered Rent. However, The Fair Market Rate for the Unit which tenant is living has been grossly abused and management seeks to evade the laws and overcharge tenants for rent. Below are the Fair Market Rates for Two-Bedroom apartments and the Rent paid for the unit 15 i at 401 West 25th Street.

| | Fair Market Monthly | Rent Charged | Fair Yearly | Rent Yearly |
|---|---|---|---|---|
| 2018 | $1789 | | | |
| 2017 | $1637 | $3665.29 | $19644 | $43983.48 |
| 2016 | $1571 | $3665.29 | $18852 | $43983.48 |

**Case No. 10192474**

14

| | | | |
|---|---|---|---|
| 2015 $1481 | $3665.29 | $17772 | $43983.48 |
| 2014 $1474 | $3629 | $17688 | $43548 |
| 2013 $1440 | $3489.42 | $17280 | $41,873.04 |
| 2012 $1424 | $3421 | $17088 | $41052 |

The rent overcharge based on Fair Market Rate from the years 2012 through 2017 for the two bedroom unit tenant has been continuously residing as an occupant totals $150,099.48

Based on Reassessment of Income at 30% of AMI, and considered a low-income tenant as originally certified, rent would have been overcharged by $23,940 for the year 2017 with total overcharge from 2014, 2015, 2016, 2017 from four years where tenant requested reassessment, $95,760.00. [Housing Authority of St. Louis County v. Boone, 747 S.W.2d 311 (*Mo. App. 1988) (public housing – holding that after the separation of husband and wife , the remaining spouse is liable only for adjusted rent based upon the household's new income level]*

Citations of Human Rights Law Discriminatory Practices by Landlord, Owner

   (a) To refuse to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodations because of the race, creed, color, disability, national origin, sexual orientation, military status, age, sex, marital status, or familial status of such person or persons, or to represent that any housing

accommodation or land is not available for inspection, sale, rental or lease when in fact it is so available.

(b) To discriminate against any person because of his or her race, creed, color, disability, national origin, sexual orientation, military status, age, sex, marital status, or familial status in the terms, conditions or privileges of any publicly-assisted housing accommodations or in the furnishing of facilities or services in connection therewith.

(c) To cause to be made any written or oral inquiry or record concerning the race, creed, color, disability, national origin, sexual orientation, membership in the reserve armed forces of the United States or in the organized militia of the state, age, sex, marital status, or familial status of a person seeking to rent or lease any publicly-assisted housing accommodation; provided, however, that nothing in this subdivision shall prohibit a member of the reserve armed forces of the United States or in the organized militia of the state from voluntarily disclosing such membership.

§ 296-a. Unlawful discriminatory practices in relation to credit.

a. In the case of applications for credit with respect to the purchase, acquisition, construction, rehabilitation, repair or maintenance of any housing accommodation, land or commercial space to discriminate against any such applicant because of the race, creed, color, national origin, sexual orientation, military status, age, sex, marital status, disability, or familial status of such applicant or applicants or any member, stockholder,

director, officer or employee of such applicant or applicants, or of the prospective
occupants or tenants of such housing accommodation, land or commercial space, in the
granting, withholding, extending or renewing, or in the fixing of the rates, terms or
conditions of, any such credit;

   b. To discriminate in the granting, withholding, extending or renewing, or in the fixing
of the rates, terms or conditions of, any form of credit, on the basis of race, creed, color,
national origin, sexual orientation, military status, age, sex, marital status, disability, or
familial status;

Case Law:

According to The Family Options Study:

   *"Frequently a cause than poverty and unemployment (U.S. Conference of Mayors,*
   *2006). Indeed, the availability of emergency and transitional housing has been*
   *fundamental to the safety of women and children fleeing abusive partners, and*
   *housing is a common unmet need for women seeking support services following*
   *abuse (Allen, Bybee, and Sullivan, 2004; Allen, Larsen, and Walden, 2011;*
   *Schechter, 1982; Sullivan, and Gillum, 2001). Survivors' efforts to find and*
   *maintain housing are complicated by systemic discrimination from landlords because*
   *of the abuse they have experienced (for example, Lapidus, 2003); policies which*
   *resulted in the loss of welfare benefits and the subsequent loss of housing for many*

*IPV survivors (for example, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996; Roschelle, 2008); and immigration,*

*race or ethnicity, sexual orientation, and disability status, which can further complicate survivors' experiences of housing stability and access to resources (Sokoloff and Dupont, 2005). Not surprisingly, housing instability is implicated in the health and well-being of IPV survivors, even when controlling for the severity of abuse against them (Rollins et al., 2012). Efforts to understand how to effectively meet survivors' housing needs and encourage housing stability are essential."*

*[Cityscape: A Journal of Policy Development and Research • Volume 19 Number 3 • 2017 245 U.S. Department of Housing and Urban Development • Office of Policy Development and Research]*

*WHAT ARE FREQUENTLY USED DISCRIMINATION METHODS USED ON FAMILIES WITH CHILDREN? There may be attempts to discourage families by changing terms, conditions, services and facilities. For example, different rules, charging additional fees, or applying more burdensome rental criteria, or higher rent based on the number of people or children in a family.*

*In the city's press release, the Office of Civil Rights noted that ·some landlords provided less information about rental units to testers who said they had children then they did to testers who indicated they did not have children." A follow-up with the city showed that the tester profile for familial status was more specific: a single mom with a six-year-0ld son.*

*Discrimination against single moms can say a lot about a society's biases.*

*Low-income, disabled, single moms in this case likely face some of the highest barriers in finding a place to live in a city that's already facing a steep housing shortage.*

*• Breach of Right to Pay and Stay Landlord breached tenant's right to pay and stay.*

*• Non-Compliance with Licensing / Registration Ordinances Landlord did not follow the licensing and registration ordinances.*

*The protections of VAWA or Violence Against Women Act, including the right not to be evicted on the basis of domestic violence, dating violence, sexual assault or stalking, extend to tenants in Low Income Housing Tax Credit (LIHTC) properties.  The definition of bifurcation in the regulations explains that if a VAWA act occurs, "certain tenants or lawful occupants" can be evicted while the remaining "tenants or lawful occupants" can continue to reside in the unit.*

*Bifurcating (splitting) the Lease:*

*A landlord (for public housing tenants the landlord is NYCHA) may split the lease to evict a tenant or lawful occupant who engages in criminal acts of physical violence against family members or others.*

*If the landlord splits the lease, the victim of the violence who is also a tenant or lawful occupant and other lawful occupants would not be evicted, and the landlord may not otherwise punish them.*

*The Violence Against Women Act (VAWA) creates a broad range of victim protections and service programs as a matter of law and policy. In the context of housing, VAWA*

**Case No. 10192474**                                                                                           19

*prohibits discrimination on the basis of status as a victim of domestic violence and*

*allows victims to maintain their housing. 42 U.S.C. § 14043e-11.*

*Can a housing provider set limits on the number of occupants?*

*Overly restrictive occupancy standards can have a disproportionate affect on families*

*with children and are, therefore, illegal. According to HUD, any occupancy standards in*

*housing should not be more restrictive than two individual's per bedroom, assuming*

*average sized bedrooms*


*"Nonpayment of Rent Evictions.*

*1. Tenant Right to Rent Decrease when Income Decreases.*

*Evictions for alleged nonpayment of rent must always be scrutinized especially carefully,*

*because many possible defenses are available. If the facts show that the eviction is truly*

*for nonpayment of rent (as distinguished from nonpayment of other charges), the*

*reason for the default should be examined. If, for example, the tenant did not pay*

*because of a decrease in income, thetenant family is entitled to have its rent reduced.44*

*Only two exceptions to this rule exist.45 First, an owner may refuse to process an*

*interim adjustment when the tenant reports a decrease in income if the decrease was*

*caused by a deliberate action of the tenant to avoid paying rent.46 This will almost*

*never be the reason a tenant suffers a decrease in income. Second, the owner may*

*refuse to decrease the tenant's rent if the owner has confirmation that the decrease will*

*last less than one month.47 HUD gives the owner the right, however, to process an*

*interim recertification if it chooses but cautions that an owner must implement this policy*

*consistently for all tenants.48 Therefore, in a case when the owner is resisting*

**Case No. 10192474**                                                          20

*processing an interim adjustment, the tenant should remind the owner that the owner clearly has the right to process an interim adjustment and that failure to do so may not be done in a discriminatory manner. In such a case, it may be necessary in the eviction to obtain discovery of the owner's records relating to requests by other tenants of interim adjustments. If the tenant can show inconsistent or discriminatory treatment, the tenant will have ve a defense to the eviction.49*

*2. Effective date of Rent Decrease.*

*Issues often arise over the effective date of the rent decrease. Owners frequently attempt to make the rent decrease effective the month following the owner's action in completing the interim recertification after the tenant reports the loss of income. Handbook 4350.3, however, is quite clear that if the tenant complies with interim reporting requirements, rent decreases must be effective on the "first day of the month after the date of action that caused the interim certification."50 The action causing the interim certification is the loss of income (for example, a loss of a job or reduction in child support), and not the recertification action by the owner.*

*In addition, owners often do not properly retroactively reduce a tenant's rent when the tenant delays in reporting a loss of income. Take the following example: Ms. Jones loses her job in early January. She first reports the loss of income in March. The landlord reduces Ms. Jones's rent effective April 1 and files an eviction lawsuit for the unpaid rent for February and March. The lease imposes no time requirement on reporting decreases in income, but it does require that income increases be reported in ten days. Here, the owner should reduce Ms. Jones's rent retroactive to*

*February 1. Ms. Jones complied with her interim reporting requirement, because the*

*lease does not mandate that she report the income loss within a certain reporting*

*period. Thus, under Handbook 4350.3, she is entitled to have the rent decreased*

*effective February 1.51*

[44 See 24 C.F.R. § 5.657 (c) (2011) ("A family may request an interim reexamination of family income because of any changes since the last examination. The owner must make the interim reexamination within a reasonable time after the family request."); Handbook 4350.3, at chp. 7, §2, para. 7-13, "Effective Date of Interim Recertifications;" see City of Albuquerque v. Brooks, 844 P.2d 822, 824 (N.M. 1992) (it is an equitable defense in public housing eviction for failure to pay back rent that tenant is indigent and unable to pay); Housing Authority of St. Louis County v. Boone, 747 S.W.2d 311 (Mo. App. 1988) (public housing – holding that after the separation of husband and wife , the remaining spouse is liable only for adjusted rent based upon the household's new income level); Maxton Housing Authority v. McLean, 313 N.C. 277, 328 S.E. 2d 290(N.C. 1985) (public housing – holding that after separation, remaining spouse's public housing rent should be based on new income).
45 Handbook 4350.3, chp. 7, § 2, at para. 7-11-D.

Civil Court of the City of New York
County of New York
Part: Part D, Room: 524
Date: February 28, 2018

Index #: **LT-072878-17/NY**
Motion Seq #: 2

*Page 1 of 3*



## Decision/Order

25th Street Chelsea Equities LLC
                Petitioner(s)
        -against-
Michelle Mascioli
                Respondent(s)

**Present:** <u>John H. Stanley</u>
                          Judge

Recitation, as required by CPLR 2219(A), of the papers considered in the review of this OSC for:
**vacating the judgment based on the respondent's failure to appear, restoring the case to the calendar**

| PAPERS | NUMBERED |
|---|---|
| Notice of Motion and Affidavits Annexed | _____ |
| Order to Show Cause and Affidavits Annexed | _____ |
| Answering Affidavits | _____ |
| Replying Affidavits | _____ |
| Exhibits | _____ |
| Stipulations | _____ |
| Other _____ | _____ |

Upon the foregoing cited papers, the Decision/Order in this Motion is as follows:

This is respondent's request to vacate a default
judgment for failure to appear at 11 AM on
2/8/18. Respondent states that she was at
the courthouse but was outside awaiting a
meeting with someone who was to offer her
legal advice. The court does not find this to
be an excusable default. It should be noted
that the court granted a previous default on

Date: _____

_____
Judge, Civil/Housing Court

Generated: February 16, 2018

# Civil Court of the City of New York

County of _____ New York _____

Part ___ D ___

Index Number _7 2878/17_

Motion Cal. # _____ Motion Seq. # _____

Page 2 of 3

## DECISION/ORDER

Recitation, as required by CPLR §2219 (a), of the papers considered in the review of this Motion:

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed......... | _____ |
| Order to Show Cause and Affidavits Annexed..... | _/_ |
| Answering Affidavits ............................... | _/_ |
| Replying Affidavits................................. | _____ |
| Exhibits ............................................. | _____ |
| Other................................................. | _____ |

```
} Claimant(s)/Plaintiff(s)/Petitioner(s)
        against

  Defendant(s)/Respondent(s)
```

Upon the foregoing cited papers, the Decision/Order on this Motion to _____ is as follows:

1/18/18. The petition states that the premises is rent stabilized with a monthly rent of $3,065.29 monthly. The lease expired on 1/31/18 and Respondent did not sign a lease renewal because she is disputing the monthly rent. However, the Respondent has failed to establish a colorable claim that the rental amount is unlawful. Currently $27,672.92 is owed thru Feb. at the last lease rate of $3,065.29 Respondent has not shown proof of ability to pay the arrears, Respondent has not established a meritorious defense. Respondent raised an issue of ownership but ACRIS appears to show ownership by Petitioner.

_____ Date                    _____ Judge, Civil Court

CIV-GP-85 (Revised, September, 1999)

# Civil Court of the City of New York

County of _New York_

Part _D_

Index Number _72878/17_

Motion Cal. # _____   Motion Seq. # _____

_Pae 3 of 3_

## DECISION/ORDER

Recitation, as required by CPLR §2219 (a), of the papers
considered in the review of this Motion:

| Papers | Numbered |
|---|---|
| Notice of Motion and Affidavits Annexed......... | _____ |
| Order to Show Cause and Affidavits Annexed..... | _____ |
| Answering Affidavits ............................... | _____ |
| Replying Affidavits................................. | _____ |
| Exhibits ............................................. | _____ |
| Other................................................. | _____ |

Claimant(s)/Plaintiff(s)/Petitioner(s)

*against*

Defendant(s)/Respondent(s)

Upon the foregoing cited papers, the Decision/Order on this Motion to _____

_____ is as follows:

Accordingly, respondent's request to
vacate the default judgment is denied.
In the interest of justice, execution of
the warrant is stayed 10 days to
3/12/18 for respondent to pay $27,672.92.
Upon default, serve Marshal's Notice by
mail.

_2/28/18_
Date

SO ORDERED
Judge, Civil Court
_Stanley_
_Judge Housing_

CIV-GP-85 (Revised, September, 1999)

F.C.A. §§ 467, 549, 651, 652, 654                                    GF18 8/2010
D.R.L. § 240

At a term of the Family Court of the
State of New York, held in and for
the County of New York, at 60
Lafayette Street, New York, NY
10013, on December 17, 2014

PRESENT:   Hon. Gloria Sosa-Lintner
_____

In the Matter of a **Custody/Visitation** Proceeding          **File #:**      202672
                                                              **Docket #:**    V-10482-13
**Sune Gaulsh,**                                                               V-19822-13

                                        Petitioner,
                                                              **FINAL ORDER ON**
      - against -                                            **PETITION FOR CUSTODY**
                                                                 **AND VISITATION**
**Michelle Mascioli,**

                                        Respondent.
_____

**NOTICE: YOUR WILLFUL FAILURE TO OBEY THIS ORDER MAY RESULT IN
INCARCERATION FOR CRIMINAL CONTEMPT.**

Sune Gaulsh having filed a petition on April 5, 2013, pursuant to Article 6 of the Family Court Act,
requesting an order awarding custody of the following minor child(ren):

Name                                 Date of Birth

Lucas Gaulsh                         8/24/2011

      And Michelle Mascioli having been served with a copy of the petition, been advised by the
Court of the right to counsel, and having the allegations of the petition, and having appeared before
this Court to answer the petition and to show cause why an order of custody and visitation should
not be granted

      And the Court having searched the statewide registry of orders of protection, the sex offender
registry and the Family Court's child protective records, and having notified the attorneys for the
parties and for the child and  Adam John Wolff, Michelle Mascioli, Sune Gaulsh, of the results of
these searches;

      **And the matter having duly come on to be heard before this Court;**

      **NOW, after examination and inquiry into the facts and circumstances of the case and
after hearing the proofs and testimony offered in relation thereto, it is hereby;**

      **ADJUDGED** that it is in the best interests of the above-named child require that custody and
visitation be awarded to the parties.

IT IS SO ORDERED an order of joint custody and parenting time is issued as stipulated in the attached "Parenting Plan" dated 12/17/2014. Any supplemental petitions or motions must be filed only on docket V-10482-13. All matters are settled by this order.

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**Dated:** December 17, 2014                    **ENTER**

_____
                    **Hon. Gloria Sosa-Lintner**

FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SUNE GAULSH,                                    :
                                                :   File No. 202672
                          Petitioner,           :   Docket Nos. 10482-13, 19822-13
                                                :
         -against-                              :
                                                :   **PARENTING PLAN**
MICHELLE MASCIOLI,                              :
                                                :
                          Respondent.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

         STIPULATION made and entered into this 17th day of December, 2014 by and

between the undersigned parties, SUNE GAULSH, residing at 320A Greenwich Street, New

York, New York 10013 (hereinafter the "Father"), and MICHELLE MASCIOLI, residing at 401

West 25th Street, Apartment 15I, New York, New York 10001 (hereinafter the "Mother") (each

of the Father and the Mother is sometimes referred to herein as a "Parent" or together as the

"Parents").

### W I T N E S S E T H

         WHEREAS, the parties have one (1) child in common, to wit:  Lucas John

Mascioli Gaulsh, born August 24, 2011 (hereinafter referred to as "the Child" or "Lucas"); and

         WHEREAS, the parties desire to amicably settle all issues raised in the above

captioned matters without further litigation and in the best interest of the Child by entering into

this Parenting Plan, including all issues concerning their parental rights and parental access of

the Child and all issues relating to the Child's care, custody and parenting; and

         WHEREAS, each party is represented by separate and independent counsel of his

or her own choosing with whom each has discussed his or her rights and obligations and the

terms of this Parenting Plan; and

*a separate agreement for child support.* to S6

WHEREAS, each of the parties hereto warrants and represents that such party fully understands all of the terms, covenants, conditions, provisions and obligations incumbent upon both parties by virtue of this Parenting Plan to be performed, and believes the same to be fair, just and reasonable and in the Child's best interests.

THEREFORE, in consideration of the promises and agreements hereinafter set forth, it is hereby stipulated and agreed by and between the parties as follows:

## ARTICLE I

## CUSTODY OF THE CHILD

1.      The Mother and Father shall do everything reasonable to maintain, foster and promote a feeling of affection between the Child and his Parents. Neither Parent shall do anything that may estrange the Child from either Parent or that may hamper the free and natural development of the Child's love and respect for his Parents. Neither Parent shall directly or indirectly make – or permit others to make – verbal statements derogatory either of the other or to the other in the presence or earshot of the Child.

2.      The parties agree to cooperate and shall cooperate with respect to the Child so as, in a maximum degree, to advance the Child's health, emotional and physical well-being, and to give and afford the Child the affection of both Parents and a sense of security.

**Legal Custody**

3.      The Mother and Father shall have joint legal custody of the Child, defined for purposes of this Parenting Plan to mean they shall advise and consult with each other in good faith and without delay and endeavour to reach an agreement upon all major decisions affecting the Child's health and medical treatment, education, religion, and general welfare, including but not limited to choice or change of pediatrician, school, camp or comparable summer activity, extracurricular activities, religious training and observance, psychological or psychiatric

M F M

treatment and counselling, special education, doctors and surgeons, etc.   The parties acknowledge that joint legal custody requires them to commit themselves to having civilized, productive, open and meaningful communications.  The parties shall utilize whatever method of communication is most appropriate under the circumstances and will result in a productive, civilized dialogue (whether verbal or written) between them regarding Child-related issues.  The Child's welfare, best interests, and, at an appropriate age and to the extent reasonable and possible, the Child's wishes shall at all times be the paramount concern of the parties.

       4.     In order to assist the parties in fulfilling the goals of and succeeding with the execution of this Parenting Plan, each party agrees that:

       a.     During the 2015-2016 school year, the Child shall be enrolled in a full-day universal pre-kindergarten program offered by the New York City Department of Education ("NYCDOE").  The following schools shall be given priority in the order in which they are listed so long as the school offers a NYCDOE full-day universal pre-kindergarten program during the 2015-2016 year:  (1) P.S. 150; (2) P.S. 11; (3) P.S. 33; (4) Ivy League Academy (located at 776 Avenue of the Americas, New York, New York 10010), (5) Nazareth Nursery Montessori (located at 216 West 15th Street, New York, New York 10011) (6) Manhattan Nursery School (located at 387 West 32 Street, #306, New York, New York 10001).

       b.     The Child shall be enrolled in a kindergarten and elementary school operated by the NYCDOE.  The following schools shall be given priority in the order in which they are listed:  (1) P.S. 150; (2) P.S. 234; (3) P.S. 89.

       c.     Regarding non-emergency physical health care, if, after meaningful discussion between them, the parties cannot agree upon a decision regarding the Child's physical health, then the parties shall consult with and follow the recommendation of the



Child's pediatrician at Tribeca Pediatrics or its mutually agreed successor; it being agreed that insurance coverage for such non-emergency health care shall be factored as a material consideration in such decision.

        d.     Neither Parent will commit the Child to any camp/summer activity which occurs during the other Parent's parenting time, without the written consent of such other Parent (email shall suffice). Both parties further agree that the Child's wishes will be given due regard with regard to summer programs, including but not limited to choice of summer program. The Child shall not be enrolled in sleep away camp absent the written consent of both parties.

        e.     Neither Parent will commit the Child to any extracurricular activity which occurs during the other Parent's parenting time, without the written consent of such other Parent (email shall suffice). Both parties further agree that the Child's wishes will be given due regard concerning extracurricular activities.

        f.     If a party does not respond within ten (10) days to the other party's request for consent to a proposed decision to be made jointly pursuant to this Article, it shall be deemed to be consent to the initiating Parent's proposed decision, so long as such request was properly and clearly delivered in writing (email shall suffice).

**Day-To-Day Decision-Making**

        5.     Day-to-day (i.e. not major) decisions shall be made by the Parent who is with the Child at the time such decisions need to be made. In the interests of continuity and stability for the Child, the Parents agree to discuss and make reasonable efforts to follow and impose the same general rules when the Child is with either of them in their respective residences with respect to such issues as eating habits, bedtime routine, bedtime, curfews, homework, the use of computers and phones, and social activities.

SG

MGM

**Illness And Injury**

6.     The Mother and the Father shall promptly inform each other of any illness, accident or hospitalization of the Child, and each party shall be entitled to visit with the Child in a hospital or other place of confinement.

7.     The Mother and Father shall each be entitled to independent and complete access to any physician, dentist, orthodontist, mental health professional, consultant or specialist treating the Child for any reason whatsoever.   The Father and Mother shall each directly and concurrently receive complete and full information and copies of all reports given by any such physician, dentist, orthodontist, mental health professional, consultant or specialist treating the Child.  Each party will sign any document or authorization to enable the other Parent to obtain such information and reports.

8.     Neither party shall change the Child's doctors without written agreement of the other party, and neither Parent shall bring the Child to the doctor without informing the other Parent in advance (providing, if possible, at least forty-eight hours of notice) excepting a medical emergency (in which case the parties shall proceed as set forth in Paragraph 9 of this Article) and giving the other Parent an opportunity to attend.

9.     In the event of an emergency affecting the Child's health or welfare which does not permit the prior consultation between the Mother and Father, the Parent who is with the Child at the time (and any of their respective agents or family members) shall (i) immediately do whatever is necessary and appropriate under the circumstances to ensure the safety, comfort and well-being of the Child, including seeking immediate medical attention for any health matter, consistent with past practice, and (ii) as soon as possible, contact and provide the other Parent with a complete summary of the emergency and any treatment given to the Child in connection with the emergency.

10.     In the event the child becomes ill but such illness does not constitute an emergency, the parent with parenting time on that day will have the ability to make a preliminary, responsible and reasonable decision as to whether the child should attend school, camp/summer activity, or agreed extracurricular activities.  Said preliminary decision shall be reported to the other parent (sufficiently prior to the beginning of school, camp/summer activity, or agreed extracurricular activities) ~~whose~~ ~~who shall then have the option to briefly visit the Child at the~~ ~~New York City residence of the Parent who has parenting time with Lucas to assess his condition~~ ~~after which~~ consent to miss school, camp/summer activity, or agreed extracurricular activities shall not unreasonably be withheld.  The parties both expressly acknowledge for the purposes of this Paragraph that each parent is capable of analyzing such a circumstance and making a decision in the best interest of Lucas without or against the advice of Lucas' pediatrician, and agree that each Parent shall recommend that Lucas miss school due to illness without or against *once per month and also no more* the advice of Lucas' pediatrician no more than ~~five (5)~~ *three (3)* days per school year ~~and for no more than one day per week.~~

## Listing As Parents

11.     Both parties shall be listed as the Child's parents on any application, registration, or filing which may be filed by or on their behalf in reference to education, hospitalization, summer camps, lessons, and/or any other activity.

## School Conferences And Reports

12.     Each Parent shall be entitled to attend any conference with and receive complete detailed information from any teacher, school, tutor or coach giving instruction to the Child, and to be furnished with copies of all reports and notices given by them to the other Parent. Each party will sign any document or authorization to enable the other party to obtain

6

such information and reports. The Parents agree that they will discuss in advance, and give the other Parent an opportunity to attend or participate in, any discussions with teachers or schools that are material to the Child's education.  The Parents will use their best efforts to interface with the Child's teachers and schools in a coordinated manner and with a unified perspective.

**Participation**

13.    The Parents agree that they will each be informed of and invited (with immediate family members) to attend any public or school event in which the Child is participating.  The parties shall communicate regularly about the Child and shall use their best efforts to inform each other on a weekly basis of any significant events that are scheduled or likely to take place in the near future.

14.    The Mother and Father shall each be entitled to attend (with immediate family members) all organized Special Events in which the Child participate, defined as intramural or league sports matches, competitions, field days, drama and/or music performances, graduations, ceremonies, religious ceremonies, birthday parties with friends (provided that they share all costs of the birthday party equally) and comparable occasions ("Special Events") irrespective of whether such events occur on the other Parent's access time.  At the beginning of each academic school year, the Mother and Father shall use reasonable efforts to arrange for the Child's school(s) to send notices of such events to both parties, if possible.  The parties shall use their best efforts to inform each other of any Special Events within a reasonable time of first becoming aware of them, unless it is known that each Parent is receiving the same notice as the other.

**Child's Attendance at School and Participation in Activities**

15.    Each Parent shall ensure that the Child attends school occurring during his or her parenting time with the Child, including pre-school/daycare and pre-kindergarten, unless (a)

the school is closed; (b) the parties agree that the Child should not attend school that day; or (c) the Child is ordered out of school by his pediatrician or the Child's school's nurse.

16.    Each Parent shall take all reasonable steps to enable the Child to participate in all camp/summer activities or agreed extracurricular activities occurring during his or her parenting time with the Child.

**Travel With The Child**

17.    Whenever either Parent travels with the Child away overnight from his or her residence, he or she shall provide the other (as soon as practicable but in no event less than three days prior to departure) with an itinerary including flight or travel information, if applicable, dates and places of travel, the place or hotel where they will be staying and a telephone number at which the Child can be reached. *This paragraph shall not apply to the Mother's travel with the Child to her parents' home in Oceanside, NY for less than forty-eight (48) hours.*

**Passports and International Travel**

18.    The Child presently has a United States passport.  The Father shall maintain the Child's passport and, on reasonable notice, shall make it available to the Mother, who shall return the passport to the Father at the conclusion of the event for which it was required.  Each party has the right to take the Child outside of the United States, so long as said destination is (a) not on the United States Department of State list of countries for which travel warnings for Americans have been issued (as of the date of this Parenting Plan, such list of "Travel Warnings" can be found at http://travel.state.gov/travel) and (b) a signatory to the Hague Convention on the Civil Aspects of International Child Abduction.  Each party agrees to provide the other with any documentation required by the party who is traveling outside the United States with the Child to a permitted destination. The Father shall provide the Mother with a photocopy of the Child's passport.  In the event that the Child's passport is lost, stolen, expired, or pending expiration, the Father shall make prompt application to obtain a new passport, and the Mother

shall take all steps and execute all documents necessary in connection with such application.

*SG*
*agrees to and*
19.   Within ten (10) days of entering this Agreement, the Mother ~~shall~~ provide *shall*

to the Father proof that she has taken substantial steps to remove the Father and the Child from

the United States government's no-fly list and must simultaneously provide an update as to what

is needed to complete the task.  The Mother agrees that she will complete all tasks in her power

*SG*
*agrees to and she*
and do what is necessary to ensure that the Father and the Child are in fact removed from the no-

fly list within twenty (20) days of entering this Agreement. *The Father ~~shall~~ provide*
*to the Mother the Child's*
**Access With Each Parent's Family And Custody In The** *Social security numb*
**Event Of A Death Of A Parent Prior To A Child's Emancipation** *with ~~Patent~~ one day of*
*~~Agreen~~*
20.   If either Parent dies before the Child is emancipated (as defined in the

Child Support Agreement simultaneously executed herewith (hereinafter "Emancipated")), the

surviving Parent, who shall become the Child's sole custodial parent, agrees to foster the Child's

relationship with the deceased Parent's family. */and agrees that the Child shall*
*spend three weeks per year with the deceased Parents*
**Names** *immediate family.*

21.   The parties will cause the Child to not be known or identified by any name

other than as set forth in the recitals to this Parenting Plan.  The parties will not initiate or permit

the use of the designations of "Father" or "Mother" or their equivalents by the Child with

reference to any person other than the Mother and the Father.

**Parents' Residences**

22.   The Father and Mother shall inform each other of his/her residence and the

residence, whereabouts, location and contact telephone numbers of the Child until the Child is

Emancipated.  The parties shall at all times inform each other of each other's cellular and land

line telephone numbers, as well as principal email addresses, and shall use their respective best

efforts to directly answer phone calls, and promptly reply to emails and voicemails, from the

*SG*
*Mon*

other Parent.

23.     Within 30 days of execution of this Agreement, the Mother ~~shall~~ *agrees to* take all $SG$ steps to remove the Father from the lease securing the Mother's current residence (401 West 25th Street, Apartment 15I, New York, New York 10001 (the "Apartment")).  The Mother agrees to indemnify the Father for any payment that he is called upon or required to make, at any time, in connection with the Apartment, including the enforcement of this Paragraph, and agrees that any $SG$ such payments may be unilaterally deducted by the Father from any payments as may be due to the Mother. *For the 30 days following execution of this Agreement and Once the Father is removed from the lease securing the Apartment, the Father ~~shall~~ agrees to take no action to have the mother evicted from the Apartment or any other apartment.*

## ARTICLE II

## PARENTAL ACCESS

1.     Each  Parent  shall  have  parenting  time  with  the  Child  on  alternate weekends  beginning  Friday  immediately  after  school,  camp/summer  activity,  or  agreed extracurricular activities and ending on Sunday at 7:00 p.m.

2.     The Mother shall have parenting time with the Child every Tuesday and Wednesday beginning immediately after school, camp/summer activity, or agreed extracurricular activities on Tuesday and ending at the commencement of school, camp/summer activity, or agreed extracurricular activities on Thursday.

3.     The Father shall have parenting time with the Child every Sunday and Monday beginning at 7:00 p.m. on Sunday and ending at the commencement of school, camp/summer activity, or agreed extracurricular activities on Tuesday.  The Father shall have parenting time with the Child every Thursday beginning immediately after school, camp/summer activity, or agreed extracurricular activities on Thursday and ending at the commencement of school, camp/summer activity, or agreed extracurricular activities on Friday.

$SG$

*mom*

4.      The Parent with parenting time immediately following the Child's school, camp/summer activity, or agreed extracurricular activities shall be responsible for picking up the Child.   Therefore, the Father is responsible for picking up the Child on Mondays (during the school year), Thursdays, and alternate Fridays; and the Mother is responsible for picking up the Child on Mondays (during the Summer Recess as hereinafter defined), Tuesdays, Wednesdays, and alternate Fridays.

5.      The Parent with parenting time immediately preceding the Child's school, camp/summer activity, or agreed extracurricular activities shall be responsible for dropping off the Child, subject to Paragraph 9 of this Article.   Therefore, subject to Paragraph 9 of this Article, the Father is responsible for dropping off the Child on Mondays, Tuesdays (during the school year), and Fridays; and the Mother is responsible for dropping off the Child on Tuesdays (during the Summer Recess), Wednesdays and Thursdays.

6.      At the conclusion of the Mother's parenting time on Sunday nights, the parties shall alternate picking up and dropping off Lucas, with the Father picking up Lucas from the Mother's Manhattan residence and the Mother dropping off Lucas at the Father's Manhattan residence.   With respect to any other parenting time that does not begin or conclude at the commencement or conclusion of the Child's school, camp/summer activity, or agreed extracurricular activities the parties shall transition the Child at a location within twenty minutes of public transport from P.S. 150 (located at 334 Greenwich Street, New York, New York 10013).

7.      Prior to the Child being enrolled in kindergarten, the Parent responsible for picking up the Child from school may do so at the later of (a) the conclusion of any

56

MGM

afterschool program in which the Child is enrolled on the particular day, or (b) the time at which the educational content of the school schedule concludes on the particular day.

8.      If the Child does not have school, camp/summer activity, or agreed extracurricular activities on a particular day (aside from the holidays set forth in Paragraphs 13-21 of this Article), then the parent responsible for dropping off the Child at school, camp/summer activity, or agreed extracurricular activities (in accordance with Paragraph 5 of this Article) on that day shall have parenting time through 5:30 p.m.

9.      When the Mother is responsible for dropping off the Child at school, if Lucas does not timely arrive at school on three or more occasions in any calendar month (including during the summer months), then (a) the Father shall have the option, without court order, to pick up the Child at the Mother's residence up to one hour prior to the official start time of school (or as early as 8:30 a.m. during the 2014-2015 school year) and bring Lucas to school; and (b) such latenesses shall constitute a material change of circumstances supporting a basis for a modification of the parenting schedule.  During the 2014-2015 school year (and subsequent summer months), timely arrival at Lucas' current school, Manhattan Nursery School, shall be no later than 9:30 a.m.  In subsequent years, timely arrival shall be no later than the official start time of the school or program in which Lucas is enrolled.

10.      To effectuate the goals of Paragraph 9 of this Article, so long as Lucas attends Manhattan Nursery School, the Parents shall enter Lucas' daily arrival time in the school's official sign-in system; failure to do so shall be deemed a late drop-off.  The Parents shall thereafter comply with the sign-in procedures and policies of any school that Lucas attends and record timely and late arrivals in accordance with such procedures and policies; failure to do so shall be deemed a late drop-off.

11.     The parties shall each exert appropriate efforts to maintain reasonable, free and unhampered telephone and e-mail (at an appropriate age) contact, and to facilitate private "Skype" (or other live video connection) service at reasonable times, between the Child and the other Parent.

12.     The parties agree that Paragraphs 13 - 26 of this Article shall, unless expressly stated to the contrary, take precedence over Paragraphs 1 - 3 of this Article, and the alternating weekend schedule pursuant to Paragraph 1 of this Article shall restart following the holiday, break or vacation referenced in Paragraphs 13 - 26 of this Article such that the Parent that did not have the holiday, break or vacation shall have the weekend following the holiday or vacation.   For example, if the Father was precluded from having his regularly scheduled weekend parenting time with the Child during the Thanksgiving Holiday, then he will have parenting time the following weekend, and the alternating weekend schedule will commence anew accordingly.

13.     <u>Thanksgiving Break:</u>  The parties shall alternate the Thanksgiving break with the Mother having parenting time with the Child in all odd years and the Father having parenting time with the Child in all even years.  The Thanksgiving break shall be defined as beginning immediately after school or agreed extracurricular activities on the last day of school prior to Thanksgiving and ending at Sunday at 7:00 p.m.

14.     <u>Christmas and Christmas/New Year's Vacation.</u> The parties shall alternate the Christmas/New Year's Eve Vacation with the Father having parenting time with the Child in odd-numbered years and the Mother having parenting time with the Child in even-numbered years.  Christmas/New Year's Vacation is defined as the period beginning immediately after the close of the regular school session preceding the Christmas holiday (or agreed extracurricular



S6
MoM

*(or if no school at 9 a.m.)*

activities on such day) and ending at 7:00 p.m. on the day immediately preceding the Child's

return to school.  Whichever Parent is with the Child on Christmas Day will use his/her best

efforts to ensure that the Child is available to speak to the other Parent via telephone or Skype (or

other live video connection) on Christmas Day.

15.   Notwithstanding anything to the contrary, the schedule for the December *(remainder of Decemb and the*

2014/January 2015 break shall be as follows and the alternating weekend schedule pursuant to

Paragraph 1 of this Article shall not restart following the below schedule:

*a. December 17 - Father has parenting time. December 18-19 - Mother has parenting tir*

~~b.~~   The Father shall have parenting time with Lucas from December

20, 2014 at 8 a.m. (at which time the Father will pick up Lucas from the Mother's Manhattan

residence) through the commencement of school on December ~~22~~ **23**, 2014.

~~c.~~   The Mother shall have parenting time with Lucas from December

23, 2014 beginning immediately after the conclusion of school through December 27, 2014 at 8

a.m. at which time the Father will pick up Lucas from the Mother's Manhattan residence *and have parenting time through December 29, 2014 at 9 a.m. (at which time the Father shall drop off Lucas at the Mothers Manhattan residence. The Mother will then have parenting time until December 31, 2014*

~~d.~~   The Father shall have parenting time with Lucas from December

31, 2014 beginning immediately after the conclusion of school through the commencement of

school on January 2, 2015. ~~e.~~ *The Mother shall have parenting time with Lucas the weekend of January 2-4, 20 in accordance with Paragraph 1 of this Article.*

16.   Mid-Winter (February) Vacation.  The parties shall alternate the Mid-

Winter (February) Vacation, if any, with the Mother having parenting time with the Child in

odd-numbered years and the Father having parenting time with the Child in even-numbered

years.  Mid-Winter (February) Vacation is defined as the period beginning immediately after the

close of the regular school session preceding the Mid-Winter (February) Vacation, if any (or

agreed extracurricular activities on such day), and ending at 7:00 p.m. on the day immediately

preceding the Child's return to school.

*f. The Father shall have parenting time with Lucas the weekend of February 6-8, 2015 in accordance with Paragraph 1 of this Article.*

14

17.     Easter Holiday.  Provided that Easter Sunday does not fall during Spring Break (in which case Paragraph 17 of this Article shall take precedence), the parties shall alternate the Easter Holiday with the Father having parenting time with the Child in odd-numbered years and the Mother having parenting time with the Child in even-numbered years. The Easter holiday is defined as the period beginning immediately after school or agreed extracurricular activities on Good Friday (or if school is closed, then at 5:30 p.m. on Good Friday) through 7:00 p.m. on Easter.

18.     Spring Break:  The parties shall alternate the Child's spring break with the Father having parenting time with Child in odd-numbered years and the Mother having parenting time with the Child in even-numbered years.  Spring Break is defined as the period beginning immediately after the close of school prior to the spring recess (or agreed extracurricular activities on such day) and ending at 7:00 p.m. on the day immediately preceding the Child's return to school.

19.     Independence Day Holiday:  The parties shall alternate the Independence Day Holiday with the Father having parenting time with the Child in odd-numbered years and the Mother having parenting time with the Child in even-numbered years.  If July 4 falls on a Friday, Saturday, or Sunday, then the Independence Day Holiday is defined as the period beginning on the Thursday immediately before July 4 at the conclusion of school, camp/summer activity, or agreed extracurricular activities (or if none, then 5:30 p.m.) and ending on the following Sunday at 7:00 p.m.  If July 4 falls on a Monday, then the Independence Day Holiday is defined as the period beginning on the Friday immediately before July 4 at the conclusion of school, camp/summer activity, or agreed extracurricular activities (or if none, then 5:30 p.m.) and ending on July 4 at 7:00 p.m.  If July 4 falls on a Tuesday, Wednesday, or Thursday, then the

M m M

Independence Day Holiday is defined at the period beginning on July 4 at 9:00 a.m. and ending the following day at the commencement of school, camp/summer activity, or agreed extracurricular activities (or if none, then 5:30 p.m.).

20.   With respect to Labor Day and Memorial Day, the Child shall spend such day with the party who had parenting time on the preceding weekend, with the parenting time to end Monday at 7:00 p.m. on each holiday.

21.   With respect to Columbus Day and Veterans Day, the Mother shall have parenting time with the Child on Columbus Day and the day on which school is closed for Veterans Day (if any) from 9:00 a.m. through 7:00 p.m.

22.   With respect to Marin Luther King, Jr. Day, the Father shall have parenting time with the Child on such holiday from 9:00 a.m. through 7:00 p.m.

23.   With respect to Halloween, the Mother shall have parenting time with the Child in odd-numbered years and the Father shall have parenting time with the Child in even-numbered years beginning at the conclusion of school or agreed extracurricular activities (or if Halloween falls on a weekend, beginning at 9:00 a.m.) and ending at 7:00 p.m.

24.   The Child shall spend Father's Day and the Father's birthday with the Father from 9:00 a.m. to 7:00 p.m.

25.   The Child shall spend Mother's Day and the Mother's birthday with the Mother from 9:00 a.m. to 7:00 p.m.

26.   The Child's Birthdays.  The party without parenting time on the Child's birthday shall have dinner with both the Child and the Parent who is otherwise scheduled to have parenting time that day at a location selected by the Child.  The Mother shall additionally have parenting time with the Child such that the Child can have a maternal family party/joint birthday

S6

MLM

party with his two maternal cousins Little Johnny and Little Johnny, so long as same does not interfere with the Father's right to have dinner with the Child on his birthday. The maternal family party shall be within two weeks of the Child's birthday, and it is further agreed that the Father shall be afforded make-up time if such party interferes with Father's scheduled parenting time.

27.   <u>Summer Recess:</u>  With respect to the Child's Summer Recess (which shall be defined as the day following the last day of school according to the NYCDOE school calendar through the day before the start of the Labor Day Weekend), the Mother shall have additional parenting time with the Child on Mondays (which would otherwise be the Father's parenting time) beginning immediately after the conclusion of the Child's school, camp/summer activity, or agreed extracurricular activities l, including pre-school/daycare and pre-kindergarten (if any, otherwise at 5:30 p.m.) and ending Tuesday at the commencement of school, camp/summer activity, or agreed extracurricular activities, including pre-school/daycare and pre-kindergarten (if any, otherwise 5:30 p.m..)  During the Child's Summer Recess, each party shall be entitled to spend up to two (2) weeks of summer vacation with the Child (in a single, contiguous two-week block of time or two non-consecutive weeks).  The parties may agree to each have a third week of summer vacation with the Child as long as consideration is given to the practicality and feasibility of the Child's camp/summer activities and summer school. The parties shall agree on their summer vacation schedule with the Child by May 1st of each year.  The Mother shall have the first choice of vacation time in all even years and the Father shall have the first choice of vacation time in all odd years.

*[handwritten margin note: SG the parenting schedule sha adjust such that]*

28.   In the event that the Parent with scheduled parenting times is unable to be with the Child on a day where (a) the Child is ordered out of school by a doctor; (b) the Child

*[handwritten: SG  MGM]*

does not attend school with both Parents permission; (c) the Child's school is closed (aside from the holidays set forth in Paragraphs 13-21 of this Article); or (d) the Child is not enrolled in or scheduled to attend camp/summer activity or agreed extracurricular activities, then the other Parent shall be afforded the first opportunity to be with the Child.

29.     If either party shall fail to exercise any of his or her parenting time rights for any reason (other than the other party's unjustifiable refusal of such right), then he or she shall not be entitled to alternate or substitute parenting days or accumulation of parenting days, except as set forth in Paragraph 25 of this Article, unless otherwise agreed to in writing (email shall suffice).

## ARTICLE III
## LEGAL REPRESENTATION

1.     The Father and Mother represent to each other that the Father was represented by KASOWITZ, BENSON, TORRES & FRIEDMAN LLP, 1633 Broadway, New York, New York, and the Mother was represented by HAROLD, SALANT, STRASSFIELD & SPIELBERG, 81 Main Street, Suite 205, White Plains, New York 10601, as their respective attorneys.

2.     The Father had a full opportunity to consult and has consulted at length with his attorneys, KASOWITZ, BENSON, TORRES & FRIEDMAN LLP, regarding all aspects of the negotiation and execution of this Parenting Plan. The Father represents that this Parenting Plan was not the result of any fraud, duress or undue influence exercised by the Mother or any other person or persons upon him. The Father represents that this Parenting Plan has been achieved upon competent legal representation and honest negotiations. The Father represents that he read and understands each and every term and provision of this Parenting Plan. The



Father further represents that he believes that the terms and provisions of this Parenting Plan are fair and reasonable.

3.      The Mother had a full opportunity to consult and has consulted at length with her attorneys, HAROLD, SALANT, STRASSFIELD & SPIELBERG, regarding all aspects of the negotiation and execution of this Parenting Plan.   The Mother represents that this Parenting Plan was not the result of any fraud, duress or undue influence exercised by the Father or any other person or persons upon her. The Mother represents that this Parenting Plan has been achieved after competent legal representation and honest negotiations.  The Mother represents that she read and understands each and every term and provision of this Parenting Plan.  The Mother further represents that she believes that the terms and provisions of this Parenting Plan are fair and reasonable.

**<u>Legal Fees in the Event of a Breach</u>**

4.      Should either the Father or Mother breach, fail to perform or fail to comply with the terms and provisions of this Parenting Plan, whether or not such terms and provisions are financial or non-financial, the breach or failure shall be cured within thirty (30) days of the sending of written notice, by certified mail return receipt requested, demanding compliance with the terms of this Parenting Plan. The thirty (30) day period to cure after written notice shall not be applicable with respect to any non-compliance in turning over the Child to the other Parent as required by the terms and provisions of this Parenting Plan, or to matters bearing *(collectively, "Emergency Matters") SG* on the health or welfare of any Child which breaches shall be cured immediately.

5.      If the breach or failure is not cured by the expiration of the thirty (30) day period *or sooner in the event of Emergency Matters SG* and one party (the "Enforcing Party") subsequently commences and prevails in legal proceedings to enforce the performance by the other party (the "Defending Party"), the

*SG*

*MOM*

Defending Party shall pay the costs and expenses incurred by the Enforcing Party, including reasonable counsel fees.

6. If the Defending Party complies with the term or condition of the Parenting Plan alleged to have been breached after an enforcement proceeding has been commenced, then the Enforcing Party shall be deemed to have prevailed in the enforcement proceeding, and the Defending Party shall pay the costs and expenses incurred by the Enforcing Party, including reasonable attorneys' fees.

7. The provisions of Paragraphs 4 - 6 of this Article shall be in addition and without prejudice to any other rights and remedies available to the Father and Mother at law or equity.

<h3 style="text-align:center">ARTICLE IV<br>GENERAL PROVISIONS</h3>

1. This Parenting Plan and all other obligations and covenants hereunder shall bind the parties hereto.

2. If any term, provision, paragraph, or Article of this Parenting Plan should be held to be contrary to, invalid, void, or unenforceable under the law of any country, state or other jurisdiction, same shall not affect in any way or impair any other provision of this Parenting Plan, all of which shall continue, nevertheless, in full force and effect. Any term, provision, paragraph, or Article of this Parenting Plan which is held to be illegal, invalid, void, or unenforceable in any country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any country, state or jurisdiction in which the provision is legal and valid. The doctrine of severability shall be applied. The parties do not intend by this statement to imply the illegality, voidness or unenforceability of any term, provision, paragraph or Article of this Parenting Plan.



# CHILD SUPPORT AGREEMENT

AGREEMENT made this 17th day of December, 2014 by and between Michelle Mascioli, residing at 401 West 25th Street, Apartment 15I, New York, New York 10001 (hereinafter referred to as the "Mother"), and Sune Gaulsh, residing at 320A Greenwich Street, New York, New York 10013 (hereinafter referred to as the "Father").

WHEREAS, the parties have a child in common, to wit: LUCAS JOHN MASCIOLI GAULSH (the "Child" or "Lucas"), born August 24, 2011; and

WHEREAS, the parties do not presently cohabit or reside together, and they have no plan to cohabit or reside together at a future date; and

WHEREAS, both parties are listed as the Child's parents on the Child's birth certificate; and

WHEREAS, the parties are simultaneously executing an Agreement (the "Parenting Plan") which is intended to resolve the actions between the parties pending in the Family Court with respect to custody, visitation, and parenting of Lucas bearing docket numbers V-10482-13 and V-19822-13; and

WHEREAS, the parties desire that this agreement ("Agreement"), which is entered into after due and considerate deliberation, shall be and constitute an agreement and stipulation of settlement with respect to all issues which could have been raised in any action instituted by either party against the other with respect to financial support for the Child.

WHEREAS, the parties intend that this Agreement shall be so ordered.

MGM

2733905v5
12/17/2014 7:53 AM

NOW, THEREFORE, in consideration of the promises and mutual undertakings herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

### Article I

### <u>Support and Maintenance of the Child</u>

**<u>Basic Child Support</u>**

1. As and for Lucas' support and maintenance, the Father shall pay to the Mother the sum of $1,600 per month on or in advance of the first day of each and every month.  For convenience, said monthly sum is hereinafter referred to as the "Basic Child Support." *The amount of Basic Child Support shall increase by 3% every two years, starting January 1, 2017.*

2. Except for arrears accrued, if any, or other accrued and unsatisfied obligations of the Father or the Mother, the parties' obligations set forth in this Agreement shall end upon the earliest to occur of:

  (a) an Emancipation Event (as hereinafter defined) with respect to the Child;

  (b) the death of the Father; or

  (c) the death of the Mother.

3. In addition to the events listed in Paragraph 2(a) – (c), the obligations of the Father with respect to the Basic Child Support shall end upon a change of the parenting time schedule set forth in the Parenting Plan such that the Child spends materially greater time with the Father than is set forth in the Parenting Plan.  If such event occurs, then the amount of Basic Child Support that the Mother shall pay to the Father will be determined by an agreement between the parties, or if they cannot agree, by court order.

*MGM*

4.      If the parenting time schedule set forth in the Parenting Plan changes such that the Child spends materially greater time with the Mother than is set forth in the parenting plan, then such event would constitute a substantial change in circumstances such that the Mother may apply for a modification of Basic Child Support only.

5.      The parties are aware of the fact that under income tax law and regulations, the Mother is not required to include the Basic Child Support in her income for income tax purposes and that the Father is not entitled to deduct the Basic Child Support on his income tax returns.

6.      The Mother shall be exclusively entitled to claim Lucas as her dependent on her income tax returns for tax returns in respect of even-numbered years, and the Father shall be exclusively entitled to claim Lucas as his dependent on his income tax returns for tax returns in respect of odd-numbered years.  In the event that under existing income tax law and regulations, in any year, the Father or the Mother (as the case may be) cannot derive a financial benefit from claiming Lucas as his or her dependent, then and in that event the other party shall be entitled to claim Lucas as his or her dependent on his or her income tax returns.  Each party hereby agrees to execute all forms required under existing or future law which will permit the other party to claim such dependent for tax purposes.

**Emancipation Event**

7.      Lucas shall be deemed emancipated upon the earliest of these Emancipation Events:

(a)     Lucas reaching the age of 21 years;

(b)     Lucas' marriage (even though such a marriage may be void or voidable and despite any annulment of it);

3

(c)    Lucas' permanent residence away from the residences of both parties.  A residence at boarding school, camp, or college is not to be deemed a residence away from the residence of both parties, and hence, such a residence at boarding school, camp, or college is not an Emancipation Event.  Such an Emancipation Event shall be deemed terminated and nullified upon the re-establishment of either party's residence as Lucas' permanent residence, and the period, if any, from such a termination until the soonest to occur of any other Emancipation Event shall, for all purposes under this Agreement, be deemed a period prior to the occurrence of an Emancipation Event;

(d)    Lucas' death;

(e)    Lucas's entry into the armed forced of the United States (provided that such an Emancipation Event shall be deemed terminated and nullified upon discharge from such armed forces, and the period, if any, from such termination until the soonest to occur of any other Emancipation Event shall, for all purposes under this Agreement be deemed a period prior to the occurrence of an Emancipation Event);

(f)    Engaging in employment upon and after the attaining by Lucas of 18 years of age, except and provided that (1) engaging by Lucas in part-time employment shall not be deemed an Emancipation Event; and (2) engaging by Lucas in full-time employment during vacation and summer periods shall not be deemed an Emancipation Event.  Such an Emancipation Event shall be deemed terminated and nullified upon cessation by Lucas for any reason from full-time employment, and the period, if any, from such termination until the soonest to occur of any other Emancipation Event shall, for all purposes under this Agreement, be deemed a period prior to the occurrence of an Emancipation Event.

2733905v5
12/17/2014 7:53 AM

## Child Support Standards Act

8.      The parties acknowledge that they have been advised by their respective attorneys of the provisions of the Domestic Relations Law § 240 (1-b) and Family Court Act § 413 (1) known as the Child Support Standards Act (the "Act") which set forth statutory standards for determining the appropriate amount to be paid by either or both parties for child support, child care, health care expenses not covered by insurance and, in the court's discretion, educational expenses.   The parties further acknowledge that they have reviewed and understand the provisions of the Act, have had a full opportunity to obtain legal advice with respect thereto and have given due consideration to the provisions and requirements thereof.

9.      In particular, the parties acknowledge that they have been advised that the "basic child support obligation", as defined in and determined under the Act, would presumptively result in the correct amount of child support to be awarded to the custodial parent.  The Act requires that such amount be calculated by the Court and a child support award be made by applying a formula set forth therein, unless the Court has determined that application of the formula is unjust and/or inappropriate and that it is therefore appropriate to vary the support amount resulting from the application of the formula.

10.      The parties understand that the child support provisions of this Agreement deviate from the basic child support obligation and that the Act requires that there be specified in this Agreement the amount that such basic child support obligation would have been and the reason or reasons that this Agreement does not provide for payment by the non-custodial parent of his or her pro rata share of such amount.

11.      Applying the statutory formula, the basic child support obligation in this matter would be $23,970 for one child based upon the first $141,000 of "combined parental income"

*MGM*

2733905v5
12/17/2014 7:53 AM

(and an additional sum, in the Court's discretion, for combined parental income in excess of $141,000 based upon consideration of the factors set forth in the Act and/or by applying the applicable child support percentage) and an additional pro rata amount for health care expenses not covered by insurance and child care expenses and, in the discretion of the Court, educational expenses.

12.    The calculation of the basic child support obligation in accordance with the statute was made as follows:

(a)    The child support percentage is 17%.

(b)    The basic child support obligation is 17% of $141,000 or $23,970.

(c)    The Mother's pro rata share of such basic child support obligation is 15%, or $3,596 per year, based upon the Father's representation that his total gross income for the year 2013 was approximately $209,399 and the Mother's representation that her total gross income for the year 2013 was approximately $37,000, resulting in the Father having 85% and the Mother having 15% of the total combined parental income of approximately $246,399. Based on the same proportionate income, the Mother's pro rata share of child care expenses, health care expenses not covered by insurance and educational expenses is 15%.

(d)    Subject to the court's consideration of the factors enumerated in the Act, if the child support percentage were applied to the total combined parental income of $246,399, the "basic child support obligation" would be $41,888 per year, of which the Mother's pro rata share would be 15%, or $6,283 per year. The parties understand that

6

only a court, in its discretion, can determine whether to apply the child support percentage or the factors or both to combined parental income in excess of $141,000.

(e)     The parties further understand that only a court, in its discretion, can determine whether to (i) attribute or impute income to a party, or (ii) allocate a proportion of non-recurring payments from extraordinary sources not otherwise considered as income to child support.  Accordingly, the calculations herein do not include attributed or imputed income or non-recurring payments from extraordinary sources not otherwise considered as income.

13.     The reasons that the child support provisions of this Agreement do not provide for payment of the foregoing amount are:

(a)     in consideration of the mutual promises set forth in the Parenting Plan and for so long as the parenting time schedule set forth in the Parenting Plan is adhered to, the Father has agreed to (1) waive child support from the Mother and (2) pay the Basic Child Support to the Mother;

(b)     the Mother's income may include non-recurring payments from extraordinary sources and/or other imputed or additional income; it is unclear as to whether and to what extent such non-recurring payments and/or imputed or additional income should included in the calculation of the "basic child support obligation," and the parties do not desire to incur the expense each would bear in resolving such issue; and

(c)     the parties' combined parental income for the last year in which tax returns were filed exceeded $141,00; it is unclear as to whether and to what extent such excess, if any, should be included in the calculation of the "basic child support

7

obligation," and the parties do not desire to incur the expense each would bear in resolving such issue.

14.    The parties understand that in the absence of this Agreement the provisions of the Act would govern the determination of the amount of child support to be paid.  Notwithstanding the Act, the provisions thereof and the foregoing calculations, the parties hereby waive the application of such provisions and calculations and agree to the terms set forth herein.    The parties further understand that the requirements of the Act may not be waived by either party or their respective counsel.  Accordingly, the parties understand that the purpose of Paragraphs 8 through 13 of Article I is to comply with said statutory requirements.

**Support Collection Unit**

15.    The parties acknowledge that they have been advised of the provisions of CPLR § 5242, which provides for an income deduction order, and the services of the support collection unit (the "SCU"); both parties waive the issuance of an income deduction order and the services of the SCU for so long as the Father is substantially in compliance with his obligations pursuant to this Agreement.

**Waiver of Adjustments and/or Modifications of Child Support**

16.    The parties opt out of the application of Family Court Act § 451 (2)(a) and (b) and DRL § 236(B)(9)(b)(2)(i) and (ii)(A) and (B), which would permit a party to seek modification upon a showing that (a) 3 years have passed since the support order was entered, modified or adjusted; or (b) there was a change of more than 15% in either party's gross income.  The parties are opting out of such statutory scheme specifically as indicated above, and intend to deviate from such statutory provisions.  This waiver of rights is based upon the financial provisions of this Agreement.

8

## Article II

### Voluntary Payments

Any payments voluntarily made by the Father to the Mother or by the Mother to the Father, or by either party directly to any third party for the benefit of Lucas at any time for the support, maintenance, and education of Lucas in excess of the sums hereinabove specified shall not alter the Father's or Mother's legal obligations hereunder nor create any precedent for the future. Such excess payments shall not be construed as proof or indication of the Father's or the Mother's ability to make increased payments nor of the necessity for increased support and maintenance of Lucas and, accordingly, they shall not be used in any action or proceeding for evidentiary purposes or otherwise.

## Article III

### Medical Insurance and Medical Expenses

1.   Currently, Lucas has medical and hospitalization insurance provided by the Father's employment.

2.   Until an Emancipation Event shall occur, the parties shall cooperate to assure that Lucas has suitable medical and hospitalization insurance (which is reasonably comparable to the Father's current policy). If such insurance is obtainable from the Father's employer, then the costs of such insurance, if any, shall be paid 100% by the Father. If such insurance is not obtainable from the Father's employer or if the Father is unemployed, then the cost of such insurance shall be paid by the parties, with the Father paying 70% and the Mother paying 30%.

3.   Lucas' unreimbursed, uninsured medical, dental, and hospitalization expenses (as defined in this Agreement to mean prescription drug, medical, ophthalmological, including

9

prescription eyeglasses or contact lenses, dental, orthodontic, surgical, nursing, and hospital expenses for Lucas) (collectively, the "Medical Expenses") shall be paid by the parties, with the Father paying 70% and the Mother paying 30%, provided that neither party incurs any such Medical Expenses without the other party's written consent (email shall suffice), except in an emergency.

4.      The parties shall cooperate to facilitate payment and reimbursement by the insurers for any Medical Expenses paid by either party pursuant to this Article. The parties shall utilize "in-network" providers, except in an emergency.

5.      The Father shall have the option to deduct the Mother's share of the Medical Expenses from the Basic Child Support.

## Article IV

## Child Care, Education, Summer Activity, and Extracurricular Activity Expenses

### Child Care Expenses

1.      "Child Care Expenses" are hereby defined as tuition fees for the Manhattan Nursery School, where Lucas currently attends preschool, or another agreed upon child day care and/or pre-kindergarten program. Any such agreement between the parties with respect to Child Care Expenses shall be in writing (email shall suffice).

2.      The Father shall pay 70% and the Mother shall pay 30% of Child Care Expenses.

3.      The Father shall have the option to deduct the Mother's share of the Child Care Expenses from the Basic Child Support.

### Education Expenses

10

2733905v5
12/17/2014 7:53 AM

4.    The Father shall pay 70% and the Mother shall pay 30% of all of Lucas' agreed upon education expenses, including Undergraduate Education Expenses (as hereinafter defined). Any such agreement between the parties with respect to education expenses shall be in writing (email shall suffice).

5.    Undergraduate Education Expenses is defined as up to four years of undergraduate college expenses, to include but not be limited to, (i) one SATs and PSATs or like college entrance examinations and preparatory courses for such entrance examinations; (ii) application fees to colleges and universities; (iii) the expenses for trips to visit up to three schools (economy class); (iv) tuition (up to but no greater than the cost of SUNY Binghamton at the time the Child attends college unless any excess above the cost of SUNY Binghamton is agreed upon by the parties); (v) room and board (which shall include off campus housing, limited to the amount charged by the school if the Child had resided on campus, unless any excess above on-campus costs are agreed upon by the parties); (vi) books; (vii) laboratory and other fees and items charged directly by the college or university (such as student activity and registration fees); and (viii) up to four (4) round trips per school year in coach or economy fare from school to the Child's principal residence (collectively "College Expenses"). The Basic Child Support shall be reduced by the Father's contribution towards the Child's college room and board expenses.

6.    The parties shall only be responsible for the Child's College Expenses as set forth in this Article so long as the Child is pursuing with reasonable diligence a continuous course of study leading to an undergraduate degree as a full-time day undergraduate student at an accredited college or university. Undergraduate education may include education in the evening but only if during the same semester college education continues during the day. The parties shall cooperate in taking all steps necessary to obtain scholarships and financial aid for the Child

11

and will cooperate in completion of all application forms for scholarships, financial aid and the like.

7.   The Father shall have the option to deduct the Mother's share of the Education Expenses from the Basic Child Support.

**Summer Activity Expenses**

8.   "Summer Activity Expenses" are hereby defined to include but not be limited to fees and/or tuition, uniform and equipment costs, activity fees, and transportation for any summer day camp, summer sleep-away camp, or any comparable organized summer activity which is more than two weeks long in duration and which occurs during the weekday parenting time of both the Father and the Mother.

9.   The Father shall pay 70% and the Mother shall pay 30% of all of Lucas' agreed upon Summer Activity Expenses.  Any such agreement between the parties with respect to Summer Activity Expenses shall be in writing (email shall suffice).

10.   For the avoidance of doubt, Summer Activity Expenses shall not include the costs of short-term summer activities which occur solely during the parenting time of one of the parties (hereinafter "Other Summer Activities"); each party shall pay 100% of the costs of any Other Summer Activity that occurs solely during his or her parenting time.

11.   The Father shall have the option to deduct the Mother's share of the Summer Activity Expenses from the Basic Child Support.

**Extracurricular Activity Expenses**

12.   "Extracurricular Activity Expenses" are hereby defined to include but not be limited to fees and/or tuition, uniform and equipment costs, activity fees, and transportation for

any extracurricular lessons and activities which occurs during the parenting time of both the Father and the Mother, excluding Summer Activity Expenses and Other Summer Activities.

13.    The Father shall pay 70% and the Mother shall pay 30% of all of Lucas' agreed upon Extracurricular Activity Expenses.  Any such agreement between the parties with respect to Extracurricular Activity Expenses shall be in writing (email shall suffice).

14.    For the avoidance of doubt, Extracurricular Activity Expenses shall not include the costs of activities or lessons which occur solely during the parenting time of one of the parties (hereinafter "Other Extracurricular Activities"); each party shall pay 100% of the costs of any Other Extracurricular Activity that occurs solely during his or her parenting time.

15.    The Father shall have the option to deduct the Mother's share of the Extracurricular Activity Expenses from the Basic Child Support.

## Article V

## Default

1.    If either party does not pay his or her share of any expense required pursuant to Article IV above within fifteen (15) days of presentation of a receipt, invoice, or comparable document showing the nature of the expense,  then the other party, upon written notification to the defaulting party (email shall suffice), may elect to pay such past due expenses directly and deduct any such amount from any other amount as may be due to the defaulting party. If either party defaults with respect to any obligation under this Agreement and said default is not remedied within thirty (30) days after the sending of a written notice by certified mail to the defaulting party specifying said default, then the defaulting party agrees to indemnify the other party against or to reimburse such other party for any and all expenses, costs and attorney's fees

13



and disbursements resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement to be performed or complied with by the defaulting party or to enforce any of the other party's rights to recover any amount to be paid to him or her by the defaulting party pursuant to this Agreement, provided such suit or other proceeding results in a judgment, decree or order in favor of the party seeking to enforce said indemnity.

2.    For the purposes of this Agreement, it is understood and agreed that in the event that either party shall institute a suit or other proceeding against the other party to enforce any of the terms, covenants or conditions of this Agreement and after the institution of such action or proceeding and before judgment is or can be entered the defaulting party shall comply with such term or condition of the Agreement, then and in that event, the suit, motion or proceeding instituted by the other party shall be deemed to have resulted in a judgment, decree or order in favor of that party.

## Article VI

### Notices

1.    Notices required by this Agreement to be sent to the Mother shall be sufficient if sent by the Father or on his behalf by certified mail to the Mother, at 401 West 25th Street, Apartment 15I, New York, New York 10001 or to such other address which the Mother, by certified mail notice, shall have advised the Father for the sending of such notices.

2.    Notices required by this Agreement to be sent to the Father shall be sufficient if sent by the Mother or on her behalf by certified mail to the Father, at 320A Greenwich Street,

New York, New York 10013 or to such other address which the Father, by certified mail notice, shall have advised the Mother for the sending of such notices.

3.      A written acknowledgment of the receipt of a notice, however, if signed by the party to whom the notice is addressed, shall be sufficient and need not be sent by certified mail.

### Article VII

### General Provisions

1.      This Agreement and all other obligations and covenants hereunder shall bind the parties hereto.

2.      If any term, provision, paragraph, or Article of this Agreement should be held to be contrary to, invalid, void, or unenforceable under the law of any country, state or other jurisdiction, same shall not affect in any way or impair any other provision of this Agreement, all of which shall continue, nevertheless, in full force and effect. Any term, provision, paragraph, or Article of this Agreement which is held to be illegal, invalid, void, or unenforceable in any country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any country, state or jurisdiction in which the provision is legal and valid.   The doctrine of severability shall be applied.  The parties do not intend by this statement to imply the illegality, voidness or unenforceability of any term, provision, paragraph or Article of this Agreement.

3.      Each of the respective rights and obligations of the Father and Mother in this Agreement shall be deemed independent and may be enforced independently, irrespective of any of the other rights and obligations set forth in this Agreement.

4.      Except as expressly provided herein, neither this Agreement nor any provision of this Agreement shall be amended or modified except by an agreement in writing duly subscribed

15

and acknowledged with the same formality as this Agreement or by an order of a court of competent jurisdiction. Any waiver by the Father or Mother of any provision of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instances upon the strict performance of any of the provisions of this Agreement by the other party shall not be construed as a waiver or relinquishment for the future of such provision, but the same shall continue in full force and effect.

5.      The parties may at any time amend, modify or annul this Agreement without the consent of any third person and no third person shall be deemed to have been given any interest or right hereunder.

6.      This Agreement and all of the rights and obligations set forth in this Agreement shall be interpreted under the laws of the State of New York as an agreement made and to be performed within said State.

7.      The Father and Mother shall, at any and all times, upon request by the other party or by his or her legal representatives, promptly make, execute and deliver any and all other and further instruments and documents as may be necessary or desirable for the purpose of giving full force and effect to the provisions of this Agreement, without charge therefor.

8.      All notices required to be sent shall be sent by Certified Mail, Return Receipt Requested, to the parties at their respective residences.

9.      This Agreement and its provisions, together with all schedules, exhibits, documents and other instruments to be delivered herewith, sets forth the entire understanding between the parties in respect of support of the Child, and all prior agreements, contracts,

16

2733905v5
12/17/2014 7:53 AM

provisions, representations and statements between them, if any, whether written or oral in respect of support of the Child, are merged into this Agreement.

10.    The parties acknowledge that this Agreement is fair and equitable; that they are entering into this Agreement freely and voluntarily and not as a result of duress or undue influence; that they have ascertained and weighed all the facts and circumstances likely to influence their judgment herein; that they have sought and obtained legal advice independently of each other; that the Mother has been counseled by Harold Salant Strassfield & Spielberg and that the Father has been counseled by Kasowitz Benson Torres & Friedman LLP; that they have been duly apprised of their respective legal rights; that all the provisions hereof, as well as all questions pertaining thereto, have been fully and satisfactorily explained to them; that they have given due consideration to such provisions and questions; and that they clearly understand and assent to all the provisions hereof.

11.    References in this Agreement to the provisions of any statute shall be deemed to be references to said provisions as in effect on the date hereof, or if said provisions shall be changed prior to a subsequent time as of which such reference is made, to any similar provisions which shall be in effect at such subsequent time.

12.    Each of the parties has read this Agreement prior to the signing thereof.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

_____                    _____
Witness for Mother                                             Michelle Mascioli

_____                    _____
Witness for Father                                             Sune Gaulsh

17

2733905v5
12/17/2014 7:53 AM

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

On this 17 day of December, 2014, before me, the undersigned, personally appeared Michelle Mascioli, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her capacity and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

JILL F. SPIELBERG
Notary Public, State of New York
No. 02SP6259453
Qualified in Westchester County
Commission Expires April 9, 2016

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

On this 17 day of December, 2014, before me, the undersigned, personally appeared Sune Gaulsh, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

ADAM J. WOLFF
Notary Public, State of New York
No. 2WO6049819
Qualified in New York County
Commission Expires Sept. 25,

18

2733905v5
12/17/2014 7:53 AM



**NEW YORK STATE** | **Division of Human Rights**

ANDREW M. CUOMO
Governor

HELEN DIANE FOSTER
Commissioner

*HUD federal, referred*

January 25, 2018

Michelle Mascioli
401 West 25th Street, Apt. 15-I
New York, NY 10001

Re:   Michelle Mascioli v. 25th Street Chelsea Equities LLC, Dan Haron, Benyamin
       Efamov, Yoav Eton, K & R Realty Management, Inc., John Liparoto, Artimus
       Construction, Inc.
       Case No. 10192474

Dear Michelle Mascioli:

Please be advised that this office has received your complaint.  Your filing date is
1/9/2018.

Your complaint has also been filed with the U.S. Department of Housing and Urban
Development (HUD) under applicable federal law.  Your federal charge number is 02-18-9064-8.
The Division's determination of your complaint will be sent to HUD when completed.

To protect your rights, it is essential that the Division be notified promptly of any change
in your address or telephone number.  A form is enclosed for this purpose.

You will be contacted by the Human Rights Specialist assigned to your case when the
active investigation of your complaint begins.  In the meantime, if you have any questions please
call our office at (718) 741-8400.

Very truly yours,

Michael Peel
Director



**NEW YORK STATE** | **Division of Human Rights**

ANDREW M. CUOMO
Governor

HELEN DIANE FOSTER
Commissioner

January 25, 2018

Michelle Mascioli
401 West 25th Street, Apt. 15-I
New York, NY 10001

Re:    Michelle Mascioli v. 25th Street Chelsea Equities LLC, Dan Haron, Benyamin
Efamov, Yoav Eton, K & R Realty Management, Inc., John Liparoto, Artimus
Construction, Inc.
Case No. 10192474

Dear Michelle Mascioli:

As part of the investigation, it is customary to ask complainants if they are interested in or would
consider conciliation, what are the remedies sought, if there is any witness information they may
have available, and if there is comparative data that can be provided. Please provide this
information on the *Supplemental Memo* enclosed.  In addition, one of the bases of discrimination
you selected is disability.  The investigator may need to speak with your healthcare provider(s);
therefore, please complete the enclosed *Medical Authorization*.

Please also return the enclosed *New York State Division of Human Rights Verified Complaint*,
**signed and notarized, <u>no later than February 9th, 2018</u>**.

Thank you in advance for your cooperation.

Sincerely,

Delmis I. Melendez
Program Aide

*Prefer not to disclose nature of disability –
but will allow medical provider to
acknowledge or confirm the presence of disability*

*private healthcare records not necessary to pursue case + is*

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

*— Copy —*
*notarized copy mailed 2/7/18*

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

MICHELLE MASCIOLI,

                      Complainant,

           v.

25TH STREET CHELSEA EQUITIES LLC, DAN
HARON, BENYAMIN EFAMOV, YOAV ETON, K &
R REALTY MANAGEMENT, INC., JOHN
LIPAROTO, ARTIMUS CONSTRUCTION, INC.,

                      Respondents.

**VERIFIED COMPLAINT**
Pursuant to Executive Law,
Article 15

Case No.
**10192474**

---

Federal Charge No. 02-18-9064-8

       I, Michelle Mascioli, residing at 401 West 25th Street, Apt. 15-I, New York, NY, 10001, charge the above named respondents, whose address is 316 West 118th Street, Floor 4, New York, NY, 10026 with an unlawful discriminatory practice relating to housing in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of race/color, sex, familial status, disability.

       Date most recent or continuing discrimination took place is 12/1/2017.

       The allegations are:

    1.    I am a disabled white female with children under the age of 18.  Because of this, I have been subject to unlawful discriminatory actions.

    2.    See attached HUD 903 form and verified complaint.

Based on the foregoing, I charge respondents with an unlawful discriminatory practice relating to housing because of race/color, sex, familial status, disability, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondents with violating Title VIII of the federal Fair Housing Act (FHA), as amended.  I hereby authorize SDHR to forward this verified complaint to the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained in the aforementioned law.



New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068
http://www.hud.gov/local/nyn/nynopen.html

JAN 9  2018

Michelle Mascioli
401 W. 25th Street, Apt. 15i
New York, NY 10001

Dear Complainant:

Subject: Housing Discrimination Complaint
        Mascioli, Michelle v. K & R Realty Management, Inc., et al.
        Inquiry No. 545708
        HUD Case No. 02-18-9064-8

On January 09, 2018, the U.S. Department of Housing and Urban Development (HUD) accepted your
complaint of housing discrimination under the Fair Housing Act (the Act) [42 U.S.C. 3601, et seq.]. Please
retain the attached copy of the complaint for your records. This letter refers only to the complaint listed
above. HUD will send you separate notice(s) regarding any other complaints you have filed.

HUD has referred your complaint to the New York State Division of Human Rights for investigation as
required by the Act [42 U.S.C. 3610(f)]. HUD has determined that the fair housing law that the New York
State Division of Human Rights enforces is substantially equivalent to the Act, and it has the authority to
address discrimination within the area where your complaint arose. The New York State Division of Human
Rights, therefore, will take all further action on this complaint. Please direct any questions you may have
about the processing of your complaint, or any additional information that supports it, to that agency. If the
New York State Division of Human Rights fails to begin processing your complaint within 30 days, HUD
may take up your complaint again. Otherwise, HUD will not send you any further correspondence regarding
this complaint.

Acceptance Letter                                                    HUD Case No. 02-18-9064-8

During its investigation of your complaint, the New York State Division of Human Rights will attempt to informally resolve the complaint through conciliation. If the parties cannot reach an agreement, the New York State Division of Human Rights will complete its investigation and issue a decision on whether there was a violation of the law. If you do not agree with the final decision of the New York State Division of Human Rights, you can appeal in accordance with the agency's procedures. You cannot appeal the decision to HUD.

In addition to filing your complaint with the New York State Division of Human Rights, you may file a civil lawsuit in Federal District Court [42 U.S.C. 3613]. You must file any civil lawsuit no later than two (2) years after the alleged discriminatory housing practice occurred or ended. The time during which the New York State Division of Human Rights handles your complaint does not count towards this two-year limit.

Be aware that it is unlawful to coerce, intimidate, threaten, or interfere with a person in the exercise of their rights under the Act [42 U.S.C. 3617]. If you believe that anyone has taken such action against you because you filed a complaint, please report it to the New York State Division of Human Rights.

Please keep the New York State Division of Human Rights informed of your current address and contact information. If the agency cannot locate you, it cannot continue to process your complaint.

You may contact that agency at the following address.

Elizabeth Ortiz-Feliciano, Acting Director
New York State Division of Human Rights
Housing Investigation Unit
One Fordham Plaza, 4th Floor
Bronx, NY   10458
718-741-8268

Sincerely

Jay Golden
Region II Director
Office of Fair Housing
   and Equal Opportunity

Enclosures

Acceptance Letter                                           HUD Case No. 02-18-9064-8

**New York County Civil Court**
**Landlord and Tenant Judgment**

Index Number: LT-072878-17/NY

Petitioner(s):
  25th Street Chelsea Equities LLC

vs.

Respondent(s):
  Michelle Mascioli

A Notice of Petition and Non-Payment Petition duly verified and proof of service having been filed with this court and the issue having been decided before Honorable John H. Stanley Housing Court Judge on February 16, 2018, a final order is made, due to failure to appear in favor of Petitioner: 25th Street Chelsea Equities LLC.

On Motion of:   Borah Goldstein Altshuler Nahins & Goidel PC
  377 Broadway, 6th Floor, New York, NY 10013-6020

**IT IS ADJUDGED:**
That possession of the premises, described in the petition located at 401 W 25th Street Apt 15I, New York, NY 10001-, said property is further described as All Rooms, be awarded to the petitioner(s), along with a monetary judgment in the amount of $24,007.63 for a total judgment of $24,007.63, without costs.

Petitioner creditor(s) and address(es):
(1) 25th Street Chelsea Equities LLC

Respondent debtor(s) and address(es):
(1) Michelle Mascioli, at 401 W 25th Street Apt 15I, New York, NY 10001

**IT IS FURTHER ORDERED:**
That a warrant of eviction shall issue removing all named respondents from the described premises. The Execution of the Warrant is Stayed 10 days to and including _____.

Date of Decision: 02/16/2018

Honorable John H. Stanley
Housing Court Judge

Judgment entered at New York County Civil Court, 111 Centre Street, New York, NY 10013, in the STATE OF NEW YORK in the total amount of $24,007.63 on 02/16/2018 at 12:33 PM.

Judgment sequence 2

Carol Alt, Chief Clerk

Warrant issued to Marshal _____ on _____

Section 5020(c) of the Civil Practice Law and Rules requires that a satisfaction be filed with the clerk when the judgment is satisfied. Failure to do so subjects the judgment creditor to penalties.

Vaccerrello v. Koch, 107 Misc. 2d 758, 435 N.Y.S.2d 879, (Sup. Ct. N.Y. City 1980);

Bishop v. Galasso, 67 A.D.2d 753, 412 N.Y.S.2d 214 (3rd Dept. 1979).

11.     Respondents fails to submit any excuse for his failure to appear on February 16, 2018. The fact that she was "late" does not excuse her nonappearance and given her past defaults shows a blatant disregard for the severity of this proceeding.

12.     Accordingly, no excusable default has been demonstrated and the motion must be denied.

## RESPONDENT FAILS TO SET FORTH A MERITORIOUS DEFENSE

13.     Respondent fails to set forth a meritorious defense to this proceeding. Her rambling affidavit in support of her order to show cause presents numerous theories without any supporting proof whatsoever.

14.     Respondent owes $27,672.92 through February 28, 2018. (The Breakdown is annexed as Exhibit "C").

15.     Accordingly, Respondent's motion must be denied.

**WHEREFORE,** it is respectfully requested that Respondent's motion be denied in all respects, as well as for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       February 27, 2018

JEFFREY H. SEIDEN

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
377 BROADWAY
NY, NY 10013-3993
(2    31-1300

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART D
------------------------------------------------------------X     Index No.: 072878/17

25th STREET CHELSEA EQUITIES LLC,

                         Petitioner-Landlord,     **NOTICE OF ENTRY**

      -against-

MICHELLE MASCIOLI,

                        Respondent-Tenant,



------------------------------------------------------------X

           PLEASE TAKE NOTICE, that a Decision/Order of the Hon. John H. Stanley

with a Notice of Entry of which the within is a true copy was duly entered in the within

named Court on January 18, 2018.

Dated:   New York, New York
         January 22, 2018

                              Yours etc,

                              By:
                              JEFFREY H. SEIDEN, ESQ.
                              BORAH, GOLDSTEIN, ALTSCHULER,
                              NAHINS & GOIDEL, P.C.
                              Attorneys for Petitioner
                              377 Broadway
                              New York, New York 10013
                              (212) 431-1300 Ext. 307

         To:  **Michele Mascioli**
              **401 West 25th Street**
              **Apt. 15I**
              **New York, NY  10001**

BORAH,
GOLDSTEIN,
ALTSCHULER,
NAHINS &
GOIDEL, P.C.
77 BROADWAY
Y, NY 10013-3993
!12) 431-1300

Civil Court of the City of New York
County of New York
Part: Part D, Room: 524                                          Index #: LT-072878-17/NY
Date: January 18, 2018                                          Motion Seq #: 1

## Decision/Order

25th Street Chelsea Equities LLC                                 **Present:** John H. Stanley
            Petitioner(s)                                                     Judge

    -against-
Michelle Mascioli
            Respondent(s)

Recitation, as required by CPLR 2219(A), of the papers considered in the review of this OSC for:
**vacating the judgment based on the respondent's failure to answer, permitting the filing of an answer,
placing the case on the calendar**

| PAPERS | NUMBERED |
|---|---|
| Notice of Motion and Affidavits Annexed | _____ |
| Order to Show Cause and Affidavits Annexed | _____ |
| Answering Affidavits | _____ |
| Replying Affidavits | _____ |
| Exhibits | _____ |
| Stipulations | _____ |
| Other | _____ |

Upon the foregoing cited papers, the Decision/Order in this Motion is as follows:

Over petitioner's atty's objection respondent has
established an excusable default & meritorious
defense. It appears that respondent did not
find out abt. the proceeding until she received
a notice from the court. The meritorious defense
is that there appears to be an inconsistency
in the MDR. The proceeding is adjourned to
2/16/18 at 9:30 A.M. for settlement or trial

Date: 1/18/18

                                                            **SO ORDERED**
                                                    Judge, Civil/Housing Court
                                                        John H. Stanley
                                                        Judge, Housing Part

Generated: January 5, 2018

BORAH, GOLDSTEIN, ALTSCHULER, NAHINS & GOIDEL, P.C.

**ATTORNEY'S CERTIFICATION**

The undersigned, an attorney admitted to practice in the State of New York, does hereby certify, pursuant to Section 2105 CPLR, that I have compared the within _____ with the original and have found it to be a true and complete copy thereof;

Dated: _____ 20____

........................................................
Type or Print Name Below Signature

**NOTICE OF ENTRY OR SETTLEMENT**
[check and complete appropriate box and section]

**PLEASE TAKE NOTICE** that a _____

Sir(s) / Madam(s):

of which the within is a (true) (certified) copy

☐ **NOTICE OF ENTRY**
was duly entered in the within named court
on _____ 20____

☐ **NOTICE OF SETTLEMENT**
will be presented for settlement to the Hon.
_____
one of the judges of the within named court at the
Courthouse at _____
on _____ at _____ o'clock ____ M.

Dated: _____ 20____

Yours, etc.,

**BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.**

*Attorney(s) for*

Office and Post Office Address
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
FAX NUMBER: (212) 334-0960

To:
Attorney(s) for

---

Index No. L&T 072878/17      Year 20____

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK, HOUSING PART D

25TH STREET CHELSEA EQUITIES LLC,

Petitioner-Landlord

-against-

MICHELLE MASCIOLI
401 West 25th Street, #15-I
New York, New York 10001,

Respondent-Tenant.

**NOTICE OF ENTRY**

**BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.**
*Attorney(s) for* Petitioner-Landlord

Office and Post Office Address
377 BROADWAY
NEW YORK, NY 10013-3993
(212) 431-1300
FAX NUMBER: (212) 334-0960

Please refer all communications to:

JEFFREY H. SEIDEN, ESQ.
307

To:                                        Esq.
Ext. _____

or:                                        Esq.
Ext. _____

Attn:                     ) for
To:

---

**ADMISSION OF SERVICE**

The undersigned acknowledges receipt of a copy of the within _____

on _____ 20____
at _____ o'clock ____ M.

_____
Attorney(s) for
by: _____

**AFFIDAVIT OF SERVICE BY MAIL**

STATE OF NEW YORK
COUNTY OF _____

_____ being sworn, says:
I am not a party to this action; I am over 18 years
of age; I reside at _____

On _____ 20____ I served
the within _____
upon _____
the attorney(s) for _____ in this
action, at _____
the address designated by said attorney(s) for that
purpose by depositing a true copy of same enclosed
in a postpaid, properly addressed wrapper, in an
official depository under the exclusive care and
custody of the United States Postal Service within
the State of New York.

........................................................
Type or Print Name Below Signature

Sworn to before me
this _____ day of _____ 20____

next Thursday to go over all possible options in regards to releasing Sune from the lease. Please allow us some time to research these options and as they come I will be in contact with you prior to our meeting to let you know if there is any additional documentation we will need you to bring.

Like always, if you have any questions please do not hesitate to ask.

Best,

Khadija Todd

**From:** Michelle Mascioli [mailto:michellegmas@gmail.com]
**Sent:** Wednesday, October 15, 2014 8:14 AM
**To:** Khadija Todd
**Cc:** Aaron Cohen
**Subject:** Re: 401 - 15i

Thank you Khadija and Aaron!

Myself and Sune Gaulsh are listed on the original lease. I would like to renew the lease and remain in the apartment with my son, however Sune no longer lives in the apartment and there is an order of protection which prohibits us from co-habitating. He has been living at a new address since last year. I attempted to renew the lease last year but it was returned,  because it was only signed by myself.

I understand Rent Stabilization laws give tenants a right to renew and  Sune can either assign his lease rights over to me or I can become a successor to his share of the lease if I show documentation that he has abandoned the apartment and the owner approves the lease change under this circumstance of a court order.

I have been trying for over a year to sort this issue out while the domestic problems are becoming exacerbated. There are ongoing issues of harassment and domestic disputes, despite a temporary order of protection, as a result of Sune's insisting that he still has a right to appear at my apartment unannounced because he is named on the lease.

I have been trying for over a year to sort this issue out while the domestic problems are becoming exacerbated. Who can I contact or meet with in person to sort out submitting the correct documentation to have his name removed from the lease? I do not want to go another year in uncertain circumstances as I do not have a signed lease from the owner and the constant harassment, threats and false accusations from Sune who is trying to have me evicted from my home.

Thanks so much for your help, you have all been great and I know this is a complicated issue but I have done the research and know how to proceed, just need to get in touch with the correct person.

Best,

Michelle Mascioli

On Thu, Oct 9, 2014 at 2:58 PM, Khadija Todd <Khadija@kandrrealty.com> wrote:

Please see the attached lease renewal and rent stabilization rider. Should you have any further
questions please do not hesitate to contact me.

Best,

Khadija Todd

**From:** Michelle [mailto:michellegmas@gmail.com]
**Sent:** Thursday, October 09, 2014 1:43 PM
**To:** Khadija Todd
**Cc:** Aaron Cohen
**Subject:** Re: 401 - 15i

I already received the option to renew  papers... And misplaced them. I need to sign
it and return them stating if i want a 1 or 2 year renewal, sign the window disclosure
etc etc...

Michelle Mascioli

646-761-3645

On Oct 9, 2014, at 1:26 PM, Khadija Todd <Khadija@kandrrealty.com> wrote:

Hi Michelle,

I am not sure what renewal you are referring to. Your new renewal will not be mailed out
until November.

Best,

Khadija Todd

**From:** Aaron Cohen
**Sent:** Thursday, October 09, 2014 12:18 PM
**To:** Khadija Todd
**Cc:** Michelle
**Subject:** 401 - 15i

Hi Khadija,

Myself and Sune Gaulsh are listed on the original lease. I would like to renew the lease and remain in the apartment with my son, however Sune no longer lives in the apartment and there is an order of protection which prohibits us from co-habitating. He has been living at a new address since last year. I attempted to renew the lease last year but it was returned,  because it was only signed by myself.

I understand Rent Stabilization laws give tenants a right to renew and  Sune can either assign his lease rights over to me or I can become a successor to his share of the lease if I show documentation that he has abandoned the apartment and the owner approves the lease change under this circumstance of a court order.

I have been trying for over a year to sort this issue out while the domestic problems are becoming exacerbated. There are ongoing issues of harassment and domestic disputes, despite a temporary order of protection, as a result of Sune's insisting that he still has a right to appear at my apartment unannounced because he is named on the lease.

I have been trying for over a year to sort this issue out while the domestic problems are becoming exacerbated. Who can I contact or meet with in person to sort out submitting the correct documentation to have his name removed from the lease? I do not want to go another year in uncertain circumstances as I do not have a signed lease from the owner and the constant harassment, threats and false accusations from Sune who is trying to have me evicted from my home.

Thanks so much for your help, you have all been great and I know this is a complicated issue but I have done the research and know how to proceed, just need to get in touch with the correct person.

Best,

Michelle Mascioli

On Thu, Oct 9, 2014 at 2:58 PM, Khadija Todd <Khadija@kandrrealty.com> wrote:

Please see the attached lease renewal and rent stabilization rider. Should you have any further questions please do not hesitate to contact me.

Best,

Khadija Todd

**From:** Michelle [mailto:michellegmas@gmail.com]
**Sent:** Thursday, October 09, 2014 1:43 PM
**To:** Khadija Todd

**Cc:** Aaron Cohen
**Subject:** Re: 401 - 15i


I already received the option to renew  papers... And misplaced them. I need to
sign it and return them stating if i want a 1 or 2 year renewal, sign the window
disclosure etc etc...


Michelle Mascioli

646-761-3645




On Oct 9, 2014, at 1:26 PM, Khadija Todd <Khadija@kandrrealty.com> wrote:

> Hi Michelle,
>
>
> I am not sure what renewal you are referring to. Your new renewal will not be mailed
> out until November.
>
>
> Best,
>
> Khadija Todd
>
>
> **From:** Aaron Cohen
> **Sent:** Thursday, October 09, 2014 12:18 PM
> **To:** Khadija Todd
> **Cc:** Michelle
> **Subject:** 401 - 15i
>
>
> Hi Khadija,
>
>
> Michelle misplaced her lease renewal, can you please email her a new
> one?
>
>
> Thanks,
>
>
> Aaron
>
>
> Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G
> LTE network.

On Thu, Oct 23, 2014 at 10:33 AM, Michelle Mascioli <michellegmas@gmail.com> wrote:

Just a heads up that I am running about 20 minutes behind for our meeting.... See you shortly

On Thu, Oct 16, 2014 at 11:04 AM, Khadija Todd <Khadija@kandrrealty.com> wrote:

Michelle,

You are all set for next Thursday at 11am. Yes, please bring all of the additional documentation and if I need anything specific I will reach out to you prior to our meeting.

Should you have any further questions or concerns please do not hesitate to contact me.

Best,

From: Michelle [mailto:michellegmas@gmail.com]
Sent: Thursday, October 16, 2014 12:45 AM
To: Khadija Todd
Cc: Aaron Cohen; Crystal Lee

Subject: Re: 401 - 15i

Thanks so much, it's a huge

Relief to hear back from you and that there is something we can work on together.

I have been researching the Rent Stabilization laws and have come to several conclusions and possibilities which will ultimately have to be ok'ed by the owner, which is very feasible as we have documentation and specific laws which can easily be interpreted to show how exactly to proceed.

Can we aim for Thursday, 10/23 at 11am? I would like to submit my renewal with my signature and supporting

Docs at that time. I am assuming you will need court orders, proof of Sunes new address.

Thanks again. Please stay in touch with updates!

Michelle Mascioli

646-761-3645

On Oct 15, 2014, at 3:46 PM, Khadija Todd <Khadija@kandrrealty.com> wrote:

Good Afternoon Michelle,

I am so sorry for the delay in responding your email. Please know that we do take your concerns very seriously and want to provide you with the best solution. I would like to schedule a time for us to meet

**To:** Crystal Lee
**Cc:** Aaron Cohen; Maureen McKeever

**Subject:** Re: 401 - 15i

Just left a message at your office, sorry to have missed this there was a family emergency.

Let me know when I can come up again or give me a call 646-761-3645

On Tue, Apr 7, 2015 at 9:38 AM, Crystal Lee <crystal@kandrrealty.com> wrote:

Hi Michelle,

Thank you for your email.

My colleague Maureen, copied on this email will be able to meet with you this morning and take your documents. We are confirmed for 11AM.

Thank You,

Crystal Lee

K&R Realty Management

316 West 118 Street, New York, NY 10026

P 646 834 9464 • F 646 786 4844

www.gonofee.com • crystal@kandrrealty.com

<image001.jpg>

<image002.gif> <image003.gif>

**From:** Michelle Mascioli [mailto:michellegmas@gmail.com]
**Sent:** Tuesday, April 07, 2015 9:00 AM
**To:** Crystal Lee

**Cc:** Aaron Cohen; Crystal Lee
**Subject:** Re: 401 - 15i

Thanks for being patient with me to renew my lease. I have documents to bring.
What is a good time and day to meet with someone this week? I can come tomorrow around 11am
if that works.

Michelle Mascioli

**Subject:** Re: 401 - 15i

Thanks so much, it's a huge

Relief to hear back from you and that there is something we can work on together.

I have been researching the Rent Stabilization laws and have come to several conclusions and possibilities which will ultimately have to be ok'ed by the owner, which is very feasible as we have documentation and specific laws which can easily be interpreted to show how exactly to proceed.

Can we aim for Thursday, 10/23 at 11am? I would like to submit my renewal with my signature and supporting

Docs at that time. I am assuming you will need court orders, proof of Sunes new address.

Thanks again. Please stay in touch with updates!


Michelle Mascioli

646-761-3645




On Oct 15, 2014, at 3:46 PM, Khadija Todd <Khadija@kandrrealty.com> wrote:

> Good Afternoon Michelle,
>
>
> I am so sorry for the delay in responding your email. Please know that we do take your concerns very seriously and want to provide you with the best solution. I would like to schedule a time for us to meet next Thursday to go over all possible options in regards to releasing Sune from the lease. Please allow us some time to research these options and as they come I will be in contact with you prior to our meeting to let you know if there is any additional documentation we will need you to bring.
>
>
> Like always, if you have any questions please do not hesitate to ask.
>
>
> Best,
>
> Khadija Todd
>
>
> **From:** Michelle Mascioli [mailto:michellegmas@gmail.com]
> **Sent:** Wednesday, October 15, 2014 8:14 AM
> **To:** Khadija Todd
> **Cc:** Aaron Cohen
> **Subject:** Re: 401 - 15i
>
>
> Thank you Khadija and Aaron!

Crystal Lee

K&R Realty Management

316 West 118 Street, New York, NY 10026

P 646 834 9464 • F 646 786 4844

www.gonofee.com • crystal@kandrrealty.com

<image001.jpg>

<image002.gif> <image003.gif>

**From:** Michelle Mascioli [mailto:michellegmas@gmail.com]
**Sent:** Tuesday, April 07, 2015 9:00 AM
**To:** Crystal Lee

**Cc:** Aaron Cohen; Crystal Lee
**Subject:** Re: 401 - 15i

Thanks for being patient with me to renew my lease. I have documents to bring.
What is a good time and day to meet with someone this week? I can come tomorrow around
11am if that works.

Michelle Mascioli

On Thu, Oct 23, 2014 at 10:33 AM, Michelle Mascioli <michellegmas@gmail.com> wrote:

Just a heads up that I am running about 20 minutes behind for our meeting.... See you
shortly

On Thu, Oct 16, 2014 at 11:04 AM, Khadija Todd <Khadija@kandrrealty.com> wrote:

Michelle,

You are all set for next Thursday at 11am. Yes, please bring all of the additional documentation and if I need
anything specific I will reach out to you prior to our meeting.

Should you have any further questions or concerns please do not hesitate to contact me.

Best,

**From:** Michelle [mailto:michellegmas@gmail.com]
**Sent:** Thursday, October 16, 2014 12:45 AM
**To:** Khadija Todd
**Cc:** Aaron Cohen; Crystal Lee

# 21 WEST END AVENUE APTS

**HANCOCK APTS 350 W. 124ᵀᴴ STREET, NEW YORK, NY 10027** TEL: (646) 388-8329 FAX: (212) 866-1912

Re: Log#_ 39271_

DATE: _3/4/16_

Dear Applicant: _Michelle G. Masaioli_

We have terminated the processing of your 21 WEST END AVENUE APTS application for the following reason(s):

_____1) You failed to appear two scheduled interviews for your management interview.

_____2) You did not submit the information/documentation previously requested.

_____3) Poor credit history including: bankruptcy filing with the last 5 years. As well as any liens judgments, account charge offs, and collection information in excess of $1,000 per head and co-head (who will be living in the unit) within the last 3 years. Applicant will be considered for housing conditional that provide a letter of proof from the debt company within two weeks from the date of this letter to verify the above item was a fault.

_____4) Rent Payment history for the tenant's portion of the rent (non- payment of tenant's portion of the rent or holdover activity within last 60 months). Applicant will be considered for housing on the condition that they provide rent breakdown and a letter from landlord to verify applicant has no delinquency within the last 60 months. This must be provided within 2 weeks from the date of the letter.

_____5) Prior housing court history including evictions that involves a case of tenant fault (i.e. court evicted a tenant for not paying rent, chronic late payer over a period of time, history of lease violation) within the last seven (7) years from the date of application submission. Management will thoroughly review housing court case(s) and shall permit applicants the opportunity to explain the circumstances involved in their prior and/or current housing court case(s) before rejecting an applicant. If tenant withholds rent because the landlord has breached the warranty of habitability, providing an unsafe or unsanitary apartment (i.e. lack of heat or hot water, or infestation) or Section 8 subsidy payments have been suspended due to no fault of the applicant, applicant will be considered for housing conditional that supporting documentation will be submitted within ten (10) business days evidencing these situations.

_____6) Criminal background checks (felonies within last 10 years or misdemeanors within last 3 years resulting in convictions or conviction of a sexual offense).

__X__7) You are over the maximum income required for family of _2_. The maximum income required for your family size _2_ is $_34,550.00_ and your household's annual income has been determined to be $_42,121.00_

_____8) You do not meet the minimum income required for family of ___. The minimum income required for your family size ___ is $_____ and your household's annual income has been determined to be _____

_____9) The entire household is comprised of full-time students and does not qualify for any of the exceptions to the full time student rule.

_____10) You submitted multiple or duplicate applications for 21 WEST END AVENUE APTS.

_____11) You do not meet the definition of a household established by the New York City Department of Housing Preservation and Development and, therefore, you do not qualify for this program.

_____12) Upon complete review of your application and documentation, you income does not demonstrate a continuing need for a Low Income Tax Credit Program.

_____13) The application and/or documentation have been found to include inconsistent information.

_____14) Debt to income ratio currently exceeds 38% (excluding student loan)

_____15) FICO score less than 580 (It is acceptable for the applicant to have no FICO score and no credit history. Also acceptable if FICO score is less than 580 and does not reflect poor credit, poor rental or high debt to income.

_____16) Other_____

If you are contesting any of the above, you may appeal this determination in writing and provide a letter of explanation to support your appeal **within two weeks** from **the date of this letter** to request a review

Sincerely,

(CH)
21 WEST END AVENUE APTS

## 21 WEST END AVENUE APTS                    LOG# 39271

| FAMILY | NAME | RELATIONSHIP | DOB | S.S.# |
|--------|------|--------------|-----|-------|
| HEAD | Michelle C. Masaioli | Head | 11/18/1980 | |
| 2 | Lucas JM Gaulsh | Son | 8/24/2011 | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |

**INCOME FROM EMPLOYMENT/OTHERS:**

| FAMILY MEMBER | INCOME TYPE | PAYMENT PER PERIOD | PAY * FREQUENCY | YEARLY TOTAL |
|---------------|-------------|--------------------|-----------------| -------------|
| Head " | Self Employment | 2015 - 20,000 2014 - 22,568 2013 - 26,195 68,763\|3 | | 22,921.00 |
| " | Child Support | 81600.00 | 12 | 19,200.00 |
| | | | | |
| | | | | |
| | | | **TOTAL:** | 42,121.00 |

**INCOME FROM ASSETS:**

| FAMILY MEMBER | TYPE OF ASSET | CASH VALUE | INTEREST RATE | ACTUAL ASSET INCOME |
|---------------|---------------|------------|---------------|---------------------|
| Head | Checking | 3480.50 | 0 % | 0 |
| | | | % | |
| | | | % | |
| | | | % | |
| | | | % | |
| | **TOTAL:** | 3480.50 | **TOTAL:** | 0 |

If total cash value of family's assets exceeds $5,000 then multiply this number by 0.06%
$ _____ X 0.06% = $ _____ Add the greater value of assets to the Yearly income and enter below


**ANNUAL INCOME $** 42,121.00 _____



Central Intake Unit – 330
West 42nd Street 14th Fl.
New York, NY, 10036

**ATTACHMENT H-1 A**

09/15/2016
535W43

MICHELLE MASCIOLI
401 West 25 Street
15i
New York, NY  10001

Dear MICHELLE MASCIOLI:
Log # 42383

Thank you for your interest in an apartment at 535W43, located in New York.  Your application for an apartment at 535W43 has been randomly selected for further processing.

THIS IS ONLY A NOTICE TO PROVIDE ADDITIONAL INFORMATION.  THIS IN NO WAY GUARANTEES AN APARTMENT.

Please provide the following information in hard copy to the address above no later than 10 business days following the postmarked date of this notification.  Include a copy of this cover letter with your package.

✓ Employment verification form(s), completed by HR or Payroll and returned third party to Breaking Ground (Sent by employer)
✓ Copy of your last six consecutive paystubs
✓ Copies of documentation of all income since January 1, 2016 (i.e. paystubs or paychecks)
☐ Social Security Award letter, dated within the last 30 days
☐ Pension or Annuity letter, dated within the last 30 days
☐ Unemployment Insurance Benefit statement showing weekly benefit
✓ Landlord Verification form, completed by Landlord or Management Company
☐ Copy of Section 8 Voucher, Rent Breakdown Letter, or proof of portable housing subsidy
✓ Asset Verification form, completed by your Bank
☐ Quarterly statement for Retirement Accounts or Life Insurance
✓ Copy of your 2013,2014,2015  Federal Tax Return form 1040 with all W2, 1099s and Schedule C
✓ Copy of your 2013,2014,2015  State Tax Return
☐ Student Status Letter
☐ Ended Employment Letter for _____
☐ Certification of Eligibility for Disability Set Aside Unit Form
✓ Other: Child Support Documentation (Court Ordered or Voluntary). Payment print outs are acceptable.
☐ Other:_____

Please contact us with any questions at 646-870-8322   and/or _____ awade @breakingground.org

Sincerely, AW

Common Ground Management Corp. c/o Breaking Ground
On Behalf of 535W43

Form W-151A (page 1)
Rev. 7/2/12



**Housing Court Liaison Referral**

Date: 9/22/16

To:      Job Center: Waverly Job Center
         Address: 12 West 14th Street

L & T Number: 16N065028
Court Date: 9/30/16

From:    Housing Court Liaison: V. Roussel
Judge/Part: _____

☐ Bronx  ☐ Brooklyn  ☐ Harlem  ☒ Manhattan  ☐ Queens  ☐ Red Hook  ☐ Staten Island

**Subject: Referral to Job Center for Action to Prevent Eviction**

The following tenant is being referred to your Job Center in order to evaluate eligibility for a cash assistance grant to prevent or forestall an eviction. Please ensure that the tenant is given a priority appointment in:

☐ Case Management Unit        ☐ Case Establishment Unit

Date Response Due by Job Center: _____

**Tenant Identifying Information**

Name: Mascioli Michelle
Address: 401 West 25th St
Apt. No. 15I      Zip Code 10001
Telephone Number: (646) 761-3645
Family Composition: Children ___ Adults 1

**CA Case Information (if applicable)**

Case Name: Mascioli Michelle
Case Type/Number: 3363874E
Caseload: _____

**Rent Status**

Monthly Rent:$ 3,665.29
Amount of Rent Owed: $ 16,463.16
Amount of Legal Costs: $ _____
Total Amount Owed: $ 16,463.16

**Landlord/Attorney Information**

Landlord/Attorney Information ☑
Name: 25th Street Chelsea Equities LLC
Address: P.O. Box 328 Emerson, NJ 07630
Telephone Number: _____
Landlord/Attorney Info. Unavailable ☐

**Court Status**

**Court Document:**
☐ Notice of Petition  ☐ Six-day Notice of Eviction
☐ Final Judgment      ☐ Show Cause Order
☐ Other (Specify)_____

**Details of Interview Conducted by Housing Court Liaison**

Applying For OSD

V. Roussel                           212)577-1102
Housing Court Liaison's Signature    Telephone Number

FIA-1116 (E) 10/21/2014
LLF



NYC **Human Resources Administration** Department of Social Services | Family Independence Administration

Date: 09/22/2016

Case Number: 00033633874E

Case Name: Mascioli Michelle

## Referral to Job Center for Emergency Rental Assistance
## Application Interview

Today, you were seen by RAU                    staff at Manhattan Housing Court

and filed an application for emergency rental assistance. In order to continue with the processing of your application

you must report to the Waverly Job Center                    located at

12 W 14th St, 2nd Fl New York, NY 10011-0000                    as soon as possible but no later than

10/03/2016                    for an initial application interview.

Please bring this referral letter and verification of the following eligibility factors for all household members with you
to the Job Center .

*Note: The Eligibility Factors and Suggested Documentation Guide (Form W-119D), which lists the common
documents that may be used to verify the necessary eligibility factors is attached.*

- Proof of Identity
- Relationship to other household members
- Residence
- Household Composition/Size
- Age
- Social Security Number
- Citizenship or Current Alien Status

- Earned Income
- Unearned Income
- Resources
- Shelter Expenses (and any related court documents)
- Rent break down or tenant ledger
- Lease (if applicable)

When you submit an application for Cash Assistance you must complete an initial eligibility interview within seven
(7) business days from your application filing date. Failure to complete an initial interview, without good cause,
within the seven (7) business days may result in the delay of your emergency rental assistance.

| Mascioli Michelle | 09/22/2016 | |
| --- | --- | --- |
| Applicant Name | Date | |

| Y. Roussel | 09/22/2016 | (718) 963-5166 |
| --- | --- | --- |
| Staff Name | Date | Telephone Number |

WAVERLY JOB CENTER

FRIDAY, SEPTEMBER 30, 2016 03:02:35 PM

FLOOR: 3

CASH ASSISTANCE

# RE 5002

CA APPLICATION INTERVIEW (HOUSING COURT)                    LANGUAGE SPOKEN:ENGLISH

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# BLUE

W-585B
Rev. 06/09

**NYC**

Human Resources
Administration
Department of
Social Services

Investigation, Revenue
and Enforcement
Administration

Bureau of Eligibility
Verification
253 Schermerhorn St.
Brooklyn, New York 11201

Date: 10/14/2016

Bureau of Eligibility Verification

Case Type: EAF

Notice of Compliance with BEV Appointment

Case Number: 033633874E          To ISC: 013

From: BEV                                        Worker: 52832

Client Name: MASCIOLI,
MICHELLE                                       SSN: XXX-XX-8043

Client Name: GAULSH, LUCAS    SSN: XXX-XX-0407

The Client(s) named above has/have complied with their scheduled
appointment which was held 10/14/2016 at 1:00 PM.

BEV Central Control

_K - Melaya Jones_

(Authorized Signature)

NOTICE TO WORKER: This form is not valid if photo copied.

# Housing Discrimination Complaint

**U.S. Department of Housing and Urban Development**
Office of Fair Housing
and Equal Opportunity

OMB Approval No. 2529-0011

**Please type or print this form**

Public Reporting Burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Read this entire form and all the instructions carefully before completing. All questions should be answered. However, if you do not know the answer or if a question is not applicable, leave the question unanswered and fill out as much of the form as you can. Your complaint should be signed and dated. Where more than one individual or organization is filing the same complaint, and all information is the same, each additional individual or organization should complete boxes 1 and 7 of a separate complaint form and attach it to the original form. Complaints may be presented in person or mailed to the HUD State Office covering the State where the complaint arose (see list on back of form), or any local HUD Office, or to the Office of Fair Housing and Equal Opportunity, U.S. Department of HUD, Washington, D.C. 20410.

**This section is for HUD use only.** Inquiry No.: 545708

| Number | (Check the applicable box) | Jurisdiction | Signature of HUD personnel who established Jurisdiction |
|---|---|---|---|
| 02-18-9064-8 | [X] Referral & Agency (specify) | [X] Yes [ ] No | |
| Filing Date 01/09/2018 | [ ] Systemic    NYSDHR | [ ] Additional Info | |
| | [ ] Military Referral | | |

**1. Name of Aggrieved Person or Organization** (last name, first name, middle initial) (Mr.,Mrs.,Miss.,Ms.)

MASCIOI, Michelle     Home Phone (646)461/3645     Business Phone

Street Address (city, county, State & zip code)
401 W 25th Street    Apt. 15i , New York, New York 10001

**2. Against Whom is this complaint being filed?** (last name, first name, middle initial)     Phone Number
Artimus Construction, 25th Street Chelsea Equities , K&R realty

Street Address (city, county, State & zip code)
316 West 118th Street , 4th Floor, New York, ny 10026

Check the applicable box or boxes which describe(s) the party named above:
[ ] Builder  [ ] Owner  [ ] Broker  [ ] Salesperson  [ ] Supt. or Manager  [ ] Bank or Other Lender  [ ] Other

If you named an individual above who appeared to be acting for a company in this case, check this box [ ] and write the name and address of the company in this space:
Name: Dan Haron Yoav
Benjamin Etamov Etim     Address

Name and identify others (if any) you believe violated the law in this case: 25th Street Chelsea Equities LLC
25th Street Equiti LLC, K+R Realty Management Inc, Artimus Construction, NYCHA (?)

**3. What did the person you are complaining against do?** Check all that apply and give the most recent date these act(s) occurred in block No. 6a below.
[X] Refuse to rent, sell, or deal with you   [ ] Falsely deny housing was available   [ ] Engage in blockbusting   [ ] Discriminate in broker's services
[X] Discriminate in the conditions or terms of sale, rental occupancy, or in services or facilities   [ ] Advertise in a discriminatory way   [ ] Discriminate in financing   [X] Intimidated, interfered, or coerced you to keep you from the full benefit of the Federal Fair Housing Law
[ ] Other (explain)

**4. Do you believe that you were discriminated against because of your race, color, religion, sex, handicap, the presence of children under 18, or a pregnant female in the family or your national origin?** Check all that apply.

| Race or Color | Religion (specify) | [X] Sex | [X] Handicap | [X] Familial Status | National Origin |
|---|---|---|---|---|---|
| [ ] Black | | [ ] Male | [ ] Physical | [X] Presence of children under 18 in the family | [ ] Hispanic [ ] Asian or Pacific Islander |
| [X] White | | [X] Female | [X] Mental | [ ] Pregnant female | [ ] American Indian or Alaskan Native [ ] Other (specify) |
| [ ] Other | | | | | |

**5. What kind of house or property was involved?**
[ ] Single-family house
[ ] A house or building for 2, 3, or 4 families
[X] A building for 5 families or more
[ ] Other, including vacant land held for residential use (explain)

**Did the owner live there?**
[ ] Yes
[X] No
[ ] Unknown

**Is the house or property**
[ ] Being sold?
[ ] Being rented?

**What is the address of the house or property?** (street, city, county, State & zip code)  Elliot-Chelsea
401 W 25th St.
New York, New York 10001

**6. Summarize in your own words what happened.** Use this space for a brief and concise statement of the facts. Additional details may be submitted on an attachment.
Note: HUD will furnish a copy of the complaint to the person or organization against whom the complaint is made.

Continued on 2 Back pages. Thank you.

**6a. When did the act(s) checked in Item 3 occur?** (Include the most recent date if several dates are involved)
Marshal Eviction notice - December 29, 2017

**7. I declare under penalty of perjury that I have read this complaint** (including any attachments) and that it is true and correct.     Signature & Date
1/5/2018

RECEIVED USDHUD

2018 JAN -5 PM 12: 30

ASSIGNED ENFORCEMENT

• affordable housing unit, self, son & his father 2012.

○ father abandoned lease, domestic violence

- asked management to re-certify my income.
+ negotiate rent or reassign apt & explained there was a court domestic violence & family court/custody issue pending as well as unstable child support payment from father.

- Landlord said rent would be negotiated after arrears were paid off - But then refused, and said there no other apartments available for me as a single mother with a child, and low income - there have been several unit advertised online, including 13 F + a unit on the 22nd floor.

- Landlord is evicting again without offering myself and son a different apartment or considering us for reassessment of income they insist we move out first and try

<u>Six</u>: Evicting a victim of Domestic violence, as a result of violence endured, konstitutes unlawful gender discrimination because domestic violence disproportionately impact women.

<u>Familial</u>: Apartment was rented in 2012 to "nuclear" family consisting of father, mother and child. Although I was unemployed with no income this did not affect our eligibility, In fact our "team" effort helped gain the apartment Alone, as a single mom, I am not even offered any units in the Building despite their being available. Management treated me completely different

<u>Disability</u>: As a tenant / person with a disability I have not been provided any services or help from the management company or the city. I have been diagnosed as Bipolar ~~with~~ (mental handicap) disorder ~~and to~~ -

<u>email</u>: michelle g mas@gmail.com

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY·OF

MARSHAL'S DOCKET NO.

INDEX NO. OF '17

72878/17
475059
RESIDENTIAL

NEW YORK

25TH STREET CHELSEA EQUITIES.
LLC
                        against

Petitioner
*Landlord*

MICHELLE MASCIOLI
401 W 25TH STREET
APT: 15I
NEW YORK          NY  10001

Respondent
*Tenant*

CITY MARSHAL

                    "John and Jane Doe"

Respondent
*Undertenant*

DANNY M. WEINHEIM #3
SUITE 504
2432 GRAND CONCOURSE
BRONX, NY 10458
(718) 295-3333

*Name of Tenant and/or undertenant being fictitious and unknown, person intended,*
*occupying apartment set forth below.*

---

| NOTICE OF EVICTION | NOTIFICACION DE DESAHUCIO |
|---|---|
| Alternative Service / Mailing | Notificación Alterna / Postal |

To the above named tenants and undertenants:

Please take notice that the Court has issued a warrant for your eviction. If you fail to vacate the described premises, **YOU MAY BE EVICTED, WITHOUT FURTHER NOTICE, ON THE SIXTH BUSINESS DAY** AFTER THE DATE OF THIS NOTICE or on any business day thereafter. "Business days" are Monday through Friday except legal holidays.

The **ONLY** way you can stop this eviction is if a Court issues an order to show cause that stays your eviction. You may apply for such an order at the Civil Court, Landlord - Tenant part, in your borough.

If a Court stay of your eviction is in effect, you will be evicted only if the stay ends or is vacated by the Court. If the Court has already ordered that you may be evicted if you fail to make a payment or comply with the Court's order by a certain date, your failure to pay or comply with the Court's order by that date may result in your eviction without further notice.

If you are dependent upon a person in the military service of the United States, advise the clerk of the Court immediately in order to protect your rights.

If you need legal assistance, the Legal Aid Society may be able to assist you (check telephone listing in your borough). A senior citizen who needs legal assistance may contact the New York City Department for the Aging, 2 Lafayette Street, New York, New York 10007, 311.

If you receive public assistance, notify your caseworker immediately. The Human Resources Administration may be able to help you with back payments whether or not you receive public assistance. Call 311 for information.

DATE OF NOTICE²                              FECHADA

    Thursday , December   21, 2017

A los susodichos inquilinos y sub-inquilinos:

Tenga a bien notar que la Corte ha emitido una order de desahuccio en contra de usted. Si no desaloja al local descrito, **USTED PUEDE SER DESHAUCIADO, SIN NOTIFICATION ADICIONAL, EL SEXTO DIA HABIL** A PARTIR DE LA FECHA DE ESTA NOTIFICATION o en cualquier dia habil de ahi en adentante. Los "dias habiles" son Lunes a Viernes, excepto los dias de fiesta legales

Usted puede detener este deshaucio SOLAMENTE si una Corte emite una orden judicial instruyendole a usted a mostrar motivos justificantes para suspender su desalojo. Usted puede solicitar esa orden (Order to Show Cause) en la Corte Civil, Seccion del Propietario - Inquilino (Civil Court, Landlord - Tenant part) en su condado.

Si una suspension de su desahucio por orden de la Corte esta en efecto, usted sera desalojado solo si la suspension caduca o la Corte la anula. Si la Corte ha ordenado ya que usted puede ser desalojado si no cumple con hacer un pago o con la orden de la Corte a partir de una fecha de vencimiento, su incumplimiento con el pago o con la orden de la Corte al llegar esa fecha puede resultar en su desahucio sin notification adicional.

Si usted depende de una persona que pertenece al Servicio Militar de los Estados Unidos, notifiquelo inmediatamente al Secretario de la Corte (Court Clerk) para asi proteger sus derechos legales.

Si usted necesita ayuda legal, la Legal Aid Society tal vez puede ayudarlo (consulte la guia telefonica de su condado). Una persona de edad avanzada que necesita ayuda legal puede comunicarse con el Departamento para Personas Mayores de la Ciudad de Nueva York, 2 Lafayette Street, New York, New York 10007, 311.

Si usted recibe asistencia publica, notifiquelo a su trabajador social (caseworker) inmediatamente. La Administracion de Recursos Humanos tal vez puede ayudarle con los pagos atrasados, reciba usted o no asistencia publica. Llame al 311 para informacion.

₁ Formerly known as "72-hour notice." Additional time has been allowed for mailing.
Anteriormente conocido como "Aviso de Deshaucio de 72 Horas." Se ha concedido tiempo adicional para enviar por correo.
₂ The date of this notice shall be on or after the date the notice is mailed to the respondent.
La fecha de este notificacion se fijara el dia en que se le envia al apelado o despues de ese dia.

**Complaints Office 02**

| | |
|---|---|
| **From:** | donotreply@hud.gov |
| **Sent:** | Wednesday, November 01, 2017 3:18 AM |
| **To:** | Complaints Office 02 |
| **Subject:** | HUD Fair Housing Complaint - MICHELLE MASCIOLI |

---

**Personal Information:**

**First Name:** MICHELLE
**Last Name:** MASCIOLI
**E-Mail:** michellegmas@gmail.com
**Address:** 401 W 25TH ST APT, 15i
**City:** NEW YORK
**State:** NY
**Zip:** 10001
**Day Time Phone:** 6467613645
**Evening Phone:** 6467613645
**Best Time To Call:** Evening

**Who do you believe discriminated against you?:**

**First Name:** John
**Last Name:** Liparoto
**Organization:** K&R Realty Management, Inc
**Address:** 316 W. 118th Street, Ny, NY 10026

**Where did the alleged act of discrimination occur?:**

**Address:** 401 W 25TH ST APT, 15i
**City:** NEW YORK
**State:** NY
**Zip:** 10001

**First Contact Information:**

**1. First Name:** MICHELLE
**Last Name:** MASCIOLI
**Organization:** M&L OPTICAL
**Day Time Phone:** 7182972953
**Evening Phone:**
**Best Time To Call:** Day

**Second Contact Information:**

**2. First Name:**
**Last Name:**
**Organization:**
**Day Time Phone:**
**Evening Phone:**
**Best Time To Call:** Day

## What happened?:

Assigned an affordable housing unit for Myself, my son and his father in 2012. Father abandoned apartment and lease after domestic violence incident. Management allowed Father to end the term of his lease. Mother asked to negotiate rent and be considered for low income unit. Landlord began eviction proceeding. Landlord said rent could be negotiated and considered for a low income unit when arrears were paid. After arrears paid, landlord said there were no units available. Landlord is attempting to evict for the second time. Sex: Evicting a victim of domestic violence as a result of the violence she endured constitutes unlawful gender discrimination because domestic violence disproportionately impacts women.

## Why do you believe you are being discriminated against?:

Sex: Evicting a victim of domestic violence as a result of the violence she endured constitutes unlawful gender discrimination because domestic violence disproportionately impacts women. Familial Status: Apartment was rented in 2012 to myself and my son's father expeditiously with full cooperation. Upon single mother status, management failed to help and became unresponsive, blocked payments, began harrassing.

**When did the last act of discrimination occur?:**

10/30/2017

**Is the alleged discrimination continuous or on going?:**

Yes